# APPLICATION OF WALTER R. EDMUNDSON

### NO. 6470

MARCH 12, 1981

RICHARDSON, C.J., OGATA, MENOR,
LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Applicant Walter R. Edmundson is a claimant for compensation under HRS Ch. 351[1] as the victim of an attack constituting assault in

---

[1] HRS § 351-1 provides in pertinent part: "The purpose of this chapter is to aid victims of criminal acts, by providing compensation for victims of certain crimes or dependents of deceased victims. . . ."

the first degree.[2] Following a hearing on the claim, the Criminal Injuries Compensation Commission (hereinafter referred to as the Commission) denied the claim by Decision and Order on November 23, 1976. Applicant appeals from this Decision, arguing that the Commission erred in denying the claim on the sole ground that collateral benefits received exceeded the $10,000 maximum payable under HRS § 351-62(b).[3]

We are of the opinion that the Commission erred in construing the import of the $10,000 limitation on the procedure for computing damages specified by HRS § 351-63(a).[4] We reverse and remand for further proceedings in accordance with this opinion.

The facts of this case are not in dispute. As a result of the criminal attack, Applicant incurred medical expenses totaling $12,142.92, all of which were paid by an insurance carrier under the workers' compensation program.

Applicant was temporarily disabled for forty-eight weeks and, during his convalescence, was paid $7,440.00 by an insurance carrier under the workers' compensation program. In addition, Applicant receives weekly compensation of $155.00. The weekly compensation began on January 25, 1975 and will terminate when the Director of the Department of Labor and Industrial Relations determines that the disability has ended.

In face of HRS § 351-63(a), the Commission denied the application. The Commission determined that it was unable to order an award for compensation because "Applicant received collateral benefits totaling $19,582.92 and will continue to receive disability benefits which will exceed $10,000 (statutory maximum payable under the law). . . ."

---

[2] Assault in the first degree is one of the crimes enumerated in HRS 351-32.

[3] HRS § 351-62(b) provides: "No compensation shall be awarded under this chapter in an amount in excess of $10,000."

[4] HRS § 351-63(a) provides:

In determining the amount of compensation to be awarded under this chapter, the criminal injuries compensation commission shall deduct amounts or benefits received or to be received from any source, whether from the offender or from any person on behalf of the offender, or from public or private funds, and which amounts or benefits result from or are in any manner, directly or indirectly, attributable to the injury or death which gave rise to the award; provided that no deduction shall be made for death benefits received or to be received under any insurance policy covering the life of a deceased victim.

## I.

We are cognizant that the permitted scope of our review in this case is dictated by HRS § 351-17, which provides in part as follows:

Any person aggrieved by an order or decision of the criminal injuries compensation commission on the sole ground that the order or decision was in excess of the commission's authority or jurisdiction, shall have a right of appeal to the supreme court . . . Except as otherwise provided in this section, orders and decisions of the commission shall be conclusive and not subject to judicial review.

The State argues that this appeal is premised on a misunderstanding of the basis on which the claim was denied. However, we find nothing in the record which supports the State's argument that the Commission denied the claim because Applicant failed to file tax returns and was therefore unable to substantiate his loss of earning power. Furthermore, the record fails to support the State's assertion that the speculative nature of Applicant's pain and suffering provided another basis for the Commission's denial of the claim.

Contrary to the State's arguments, the Commission's decision to deny compensation was based not on a factual finding that the claim failed to warrant compensation, but on a legal conclusion. The Commission concluded that under HRS § 351-63(a), it was unable to grant an award where Applicant received collateral benefits exceeding the $10,000 statutory maximum on awards.

The Commission's decision clearly involved an interpretation and application of HRS §§ 351-62(b) and 351-63(a). Where the action of an administrative board involves the construction of a statute under which it functions, a question of law is presented for our determination. *In re Application of Mary Horner*, 55 Haw. 514, 516, 523 P.2d 311, 313 (1974). Thus, the scope of our review in this case is limited to a determination of whether the Commission observed the statutory requirements set forth under HRS §§ 351-62(b) and 351-63(a).

## II.

Section 351-31, HRS, vests the Commission with discretion to award compensation to the victims of certain crimes or the depen-

dents of deceased·victims.[5] The Commission's power to grant awards is, however, subject to certain limitations. Under HRS § 351-62(b), the Commission cannot award compensation in excess of $10,000. Furthermore, under HRS § 351-63(a), the Commission must deduct benefits received by an applicant from collateral sources. Death benefits received under an insurance policy covering

---

[5] HRS § 351-31 provides:

Eligibility for compensation. (a) In the event any person is injured or killed by any act or omission of any other person coming within the criminal jurisdiction of the State after June 6, 1967, which act or omission is within the description of the crimes enumerated in section 351-32, the criminal injuries compensation commission may, in its discretion, upon an application, order the payment of compensation in accordance with this chapter:

(1) To or for the benefit of the victim; or

(2) To any person responsible for the maintenance of the victim, where that person has suffered pecuniary loss or incurred expenses as a result of the victim's injury or death; or

(3) In the case of the death of the victim, to or for the benefit of any one or more of the dependents of the deceased victim; or

(4) To a parent of an adult deceased victim, or to an adult son or daughter of a deceased victim, where the parent, or adult son or daughter, has incurred expenses on account of hospital, medical, funeral, and burial expenses as a result of the victim's injury and death.

(b) For the purposes of this chapter, a person shall be deemed to have intentionally committed an act or omission notwithstanding that by reason of age, insanity, drunkenness, or otherwise he was legally incapable of forming a criminal intent.

(c) In determining whether to make an order under this section, the commission may consider any circumstances it determines to be relevant, and the commission shall consider the behavior of the victim, and whether, because of provocation or otherwise, the victim bears any share of responsibility for the crime that caused his injury or death and the commission shall reduce the amount of compensation in accordance with its assessment of the degree of such responsibility attributable to the victim.

(d) An order may be made under this section whether or not any person is prosecuted for or convicted of a crime arising out of an act or omission described in subsection (a), provided an arrest has been made or such act or omission has been reported to the police without undue delay. No order may be made under this section unless the commission finds that:

(1) The act or omission did occur; and

(2) The injury or death of the victim resulted from the act or omission. Upon application from either the prosecuting attorney or the chief of police of the appropriate county, the commission may suspend proceedings under this chapter for such period as it deems desirable on the ground that a prosecution for a crime arising out of the act or omission has been commenced or is imminent, or that release of the investigation report would be detrimental to the public interest.

the life of a deceased victim are exempted. Finally, HRS § 351-64 provides that "no order shall have the effect of compensating any person more than once for any loss, expense or other matter compensable under this chapter."

Applicant contends that the $10,000 limitation on awards applies to the Commission's *ultimate* award based on a claimant's net economic loss plus pain and suffering. He argues that in order to determine the amount of an award under HRS § 351-63(a), the Commission must: (1) determine the claimant's gross economic loss plus pain and suffering, without regard to the $10,000 limitation on awards; (2) deduct from the gross figure all collateral benefits received by the claimant, except death benefits received under a victim's life insurance policy; and (3) order an award within the $10,000 limitation based on the net economic loss plus pain and suffering.

In support of this method of computation, Applicant notes that the introductory language of HRS § 351-63(a) was amended in 1972, and argues that the amendment represented a significant departure from the method of computation dictated by its predecessor. Hence, Applicant maintains that the Commission erred in construing the $10,000 limitation as a limitation on a claimant's gross economic loss plus pain and suffering, thereby wrongly denying his claim on the ground that collateral benefits exceeded the $10,000 statutory maximum on awards.

The State contends that the introductory language of HRS § 351-63(a) was revised for reasons of syntax, due to the expanded scope of collateral benefits required to be deducted under the amendment. Thus, the State argues that the method of computation dictated by the original language of HRS § 351-63(a) still applies under the statute, as amended.

### III.

Section 351-63(a), HRS, originally provided:

The criminal injuries compensation commission shall deduct *from any compensation awarded under this chapter* any payments received from the offender or from any person on behalf of the offender, or from the United States, a state, or any of its subdivi-

sions, or any agency of any of the foregoing, for injury or death compensable under this chapter. (Emphasis supplied).[6]

The method of computation specified under this provision is uncontested by the parties.

The Commission was required to compute an award of compensation based on the total economic loss plus pain and suffering, less collateral benefits received from or on behalf of the offender, or from any governmental sources, for the injury or death. Specifically, the Commission was to deduct these collateral benefits from "any compensation awarded under this chapter." Since "any compensation awarded under this chapter" was subject to the $10,000 limitation on awards, HRS § 351-63(a) implied that where the claimant's total economic loss plus pain and suffering exceeded $10,000, the Commission was to deduct the collateral benefits from that ceiling amount.

Under HRS § 351-63(a), as originally enacted, economic benefits received from non-governmental sources which were independent of and collateral to the wrongdoer did not act to diminish the compensation allowable under the Criminal Injuries Compensation Act. Thus, it was possible for a victim to receive medical insurance payments which would cover the entire amount of his medical expenses, and also an order by the Commission granting full compensation for the same expenses. Hawaii, Criminal Injuries Compensation Commission Second Annual Report 7 (1969). The Commission noted that the collateral source doctrine embodied in HRS § 351-63(a) had "required the Commission on numerous occasions to award payment to a victim or dependent who ha[d] received benefits for the same injury from sources such as HMSA or Kaiser, Workmen's Compensation, Veterans Administration benefits and others." *Id.* In effect, the collateral source doctrine permitted some claimants to receive what was tantamount to a "double recovery." *Id.*

In 1972, the Legislature amended HRS § 351-63(a) in response to the Commission's concerns about the economic impact of the collateral source doctrine embodied in the statute. Section 351-63(a), as amended, provides:

In determining the amount of compensation to be awarded

---

[6] HRS § 351-63(a) [L 1967, c 226, pt of § 1] is contained in the 1968 volume of the Hawaii Revised Statutes.

under this chapter, the criminal injuries commission shall deduct amounts or benefits received or to be received from any source, whether from the offender or from any person on behalf of the offender, or from public or private funds, and which amounts or benefits result from or are in any manner, directly or indirectly, attributable to the injury or death which gave rise to the award; provided that no deduction shall be made for death benefits received or to be received under any insurance policy covering the life of a deceased victim.

The amendment was important in two respects. First, the Legislature precluded the potential for double recovery by requiring that the Commission deduct all collateral amounts or benefits received by the claimant, except death benefits received under a victim's life insurance policy. Second, the Legislature revised the introductory language which determined the manner of computing the amount of damages incurred. It is the latter amendment to which our attention is turned.

In amending the introductory language of HRS § 351-63(a), the Legislature rejected the former language which had provided that "The criminal injuries compensation commission shall deduct from any compensation awarded under this chapter. . . ." In its place, the Legislature substituted the current language which provides that "In determining the amount of compensation to be awarded under this chapter, the criminal injuries compensation commission shall deduct. . . ." The crucial question on appeal is whether the amendment was intended to represent a significant departure from the method of computation specified under the predecessor statute. For guidance in interpreting the amendment, we must turn to the legislative history and to the statutory scheme as a whole.

IV.

One of the basic purposes set forth under the Criminal Injuries Compensation Act is to aid victims of criminal acts by providing compensation for victims of certain crimes or dependents of deceased victims.[7] The legislative history, however, indicates that the

---

[7] HRS § 351-1. The Act also seeks to indemnify private citizens for personal injury or property damage suffered in prevention of crime or apprehension of a criminal. *Id.*

Legislature intended to assume a much greater obligation to crime victims on the part of the State. The language of the Standing Committee Report of the House Committee on the Judiciary, which had sent the measure to the Legislature, stated:

> This bill proposes compensation awards, not as benevolent grants of funds to victims because of mercy or sympathy, but because of recognition of the fact that the government has a duty to protect its people from the consequences of criminal acts.

Hawaii, House Comm. on the Judiciary, Standing Comm. Rpt. No. 900, 1967 House Jour. 829.

We note that the amendment had been drafted by the Commission and introduced into the Legislature by the administration. It was the Commission's opinion that the amendment "would place the victim or dependent, as nearly as possible and within the statutory maximum of $10,000, into a position where he suffered no net economic loss because of the injury or death. . . ." Hawaii, Criminal Injuries Compensation Commission, "Legislative Proposal by Social Services," March 5, 1971. *See also* Hawaii, Criminal Injuries Compensation Commission Fourth Annual Report, appendices D and E (1971). Thus, the legislative history indicates an intent to compensate an eligible claimant's net economic loss to the fullest extent possible within the confines of the $10,000 limitation on awards and the prohibition against double recovery.

In light of the beneficent purpose of the statute, the government's recognition of its duty to protect people from the consequences of criminal acts, and the drafters' intent to compensate a claimant's net economic loss to the fullest extent possible, we believe the statute should be construed liberally in determining the eligibility of an applicant. *In re Application of Mary Horner*, 55 Haw. 514, 518, 523 P.2d 311, 314 (1974).

Unlike its predecessor, HRS § 351-63(a), as amended, contains no reference to a maximum figure from which collateral benefits are to be deducted. In light of the legislative intent to compensate an eligible claimant's net economic loss plus pain and suffering, we contrue the absence of such language as implying that the Commission is to deduct collateral benefits from gross economic loss plus pain and suffering, without regard to the $10,000 statutory maximum on awards. Where the claimant's net economic loss plus pain

and suffering exceeds $10,000, however, the ultimate recovery is limited to $10,000.

While cases interpreting the issue at hand are few in number, one case is directly on point and fully in accord with our view. In *Gurley v. Commonwealth*, 296 N.E.2d 477 (Mass. 1973), the Massachusetts Supreme Court was presented with a similar issue concerning the manner of computing damages recoverable by a victim of crime. In *Gurley*, the court held that the unambiguous reference in Section 5 of Chapter 258A[8] to "no award under this chapter" indicated that the General Court intended the $10,000 figure to limit the final recovery under the statute. *Id.* at 480.

## V.

Finally, we note that the State's interpretation of the $10,000 limitation would impose a narrow interpretation on HRS § 351-63(a) by automatically denying an award where collateral benefits exceeded $10,000 without regard to the gross economic loss plus pain and suffering incurred. The State's interpretation would have the effect of denying awards to persons who have suffered great economic loss, but who have received collateral benefits in excess of $10,000, while compensating claimants who have suffered small economic losses but who have received less than $10,000 in collateral benefits. Such interpretation would mean that victims who are tragically injured by the criminal acts of others would receive less or equal compensation as persons who are only slightly injured by the criminal acts of others. Certainly the Legislature could not have intended such an inequitable result.

We hold that the $10,000 provision is not a ceiling on a claimant's gross economic loss plus pain and suffering. It applies to the ultimate award, based on net economic loss plus pain and suffering. Thus, the statutory maximum on awards comes into play where the Commission determines that the actual or net economic loss plus pain and suffering exceeds $10,000 and limits the final recovery to that amount.

---

[8] General Laws, Chapter 258A, Section 5 provides that "[a]ny compensation for loss of earnings or support shall be in an amount equal to the actual loss sustained; provided, however, that no award under this chapter shall exceed ten thousand dollars."

We reverse and remand for further proceedings in accordance with this opinion.

*Evan R. Shirley (Shirley & Jordan* of counsel) for petitioner-appellant Walter R. Edmundson.

*George Yamamoto (Michael A. Lilly* on the brief), Deputy Attorneys General, for respondent-appellee State of Hawaii.