501 A.2d 105

**Maser WILLIAMS**

v.

**CRIMINAL INJURIES COMPENSATION BOARD.**

**No. 328, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 10, 1985.

Certiorari Granted Feb. 26, 1986.

Mark E. Herman, Baltimore, for appellant.

C.J. Messerschmidt, Staff Atty. (Stephen H. Sachs, Attorney and Ralph S. Tyler, Asst. Atty. Gen. on brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and GARRITY and KARWACKI, JJ.

GILBERT, Chief Judge.

Maser Williams is another on the ever increasing list of crime victims. He was shot in the face on January 22, 1982, by an assailant on a public street. Williams was blinded in his left eye. He filed a claim with the State Criminal Injuries Compensation Board (Board). The Board ultimately found that because Williams returned to his employment with no diminution in salary, he did not suffer a compensable injury within the meaning of the law. No award for permanent partial disability was made. Nevertheless, Williams was reimbursed $2,538.20 for medical expenses and loss of earnings. Dissatisfied with the declination of the Board to award him compensation for permanent partial disability, Williams appealed to the Circuit Court for Balti-

more City. That tribunal agreed with the Board. This appeal ensued.

Williams asserts that the Board and the circuit court (Byrnes, J.) misinterpreted the applicable statute, Md.Ann. Code art. 26A, § 12. The nub of Wiliams' contention is that inasmuch as he was found to have sustained a "serious financial hardship" as a result of medical bills and temporary loss of earnings, the Board should have made an award to him based on his permanent partial disability.[1] Phrased another way, Williams maintains that a finding of serious "financial hardship" begets an award for disability.

Md.Ann.Code art. 26A, § 12 provides, in pertinent part:

"(a)(1) No award shall [2] be made unless the Board ... finds that (1) a crime was committed, (2) such crime directly resulted in personal physical injury to, or death of the victim, and (3) police records show that such crime was promptly reported to the proper authorities

. . . .

. . . .

(f)(1) If the Board ... finds that the claimant will not suffer serious financial hardship, as a result of the loss of earnings or support and the out-of-pocket expenses incurred as a result of the injury, if not granted financial assistance pursuant to this article to meet the loss of earnings, support, or out-of-pocket expenses, the Board ... shall deny an award. In determining the serious financial hardship, the Board ... shall consider all of the financial resources of the claimant. Unless total dependency is established, a family is considered to be partially dependent on a mother with whom they reside without regard to actual earnings."

---

1. No cross-appeal was entered, hence we do not consider the propriety *vel non* of the Board's finding of "serious financial hardship" with respect to medical expenses and temporary loss of income.

2. 1985 Md.Laws, ch. 120, effective July 1, 1985, struck the words "No award shall" and inserted in lieu thereof the words "An award may not."

██ Williams asseverates that, under § 12(f)(1), once a crime victim has established "serious financial hardship" as a result of either lost earnings, lost support, or out-of-pocket expenses, he or she is entitled to full recovery for his or her injury. Proceeding from that starting point, Williams asserts that since he established serious financial hardship resulting from his lost earnings, as well as his out-of-pocket expenses, he is entitled to compensation for the permanent partial disability he has sustained. Williams claims that he is so entitled to an award despite the fact that he has incurred no economic hardship as a result of his disability.

The State, on the other hand, posits that, under § 12(f)(1), no award for physical disability can be made unless the disability results in "serious financial hardship."

Succinctly, the State's position is that if there is no economic loss from the disability, there can be no compensable disability award. The State thinks the statute was enacted to afford comfort to those who need it and not to furnish redress to every victim, irrespective of need.

"The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the Legislature." *Soper v. Montgomery County*, 294 Md. 331, 335, 449 A.2d 1158, 1160 (1982). "The primary source from which we glean this intention is the language of the statute itself." *Mazor v. Dep't of Correction*, 279 Md. 355, 360, 369 A.2d 82, 86 (1977). In the matter *sub judice*, the General Assembly's intent in enacting Md.Ann.Code art. 26A—the Criminal Injuries Compensation Act—is clear. The statute contains a "Declaration of policy and legislative intent." Md.Ann. Code art. 26A, § 1. The legislature said:

"[We recognize] that many innocent persons suffer personal physical injury or death as a result of criminal acts or in their efforts to prevent crime or apprehend persons committing or attempting to commit crimes. Such persons or their dependents may thereby suffer disability, incur financial hardships or become dependent upon public assistance. The legislature finds and deter-

mines that there is a need for government financial assistance for such victims of crime. Accordingly, it is the legislature's intent that aid, care and support be provided by the State, as a matter of moral responsibility, for such victims of crime."

However noble the cause, the legislature did not "rush in where angels fear to tread,"[3] but assumed "moral responsibility" with some trepidation. Because the funds to be disbursed were public, the legislature was wary of allowing recompense without restraint.[4] *Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 498, 331 A.2d 55, 62–63 (1975). As a result, certain provisions were incorporated into the Act so as to limit its availability strictly to those in need of assistance. Section 12(f)(1), as above quoted, is one of those provisions.

The focal point in § 12(f)(1) is the incurring of "serious financial hardship." *See Gould,* 273 Md. at 496, 331 A.2d at 62. When § 1 of art. 26A is read in conjunction with § 12(f)(1), it becomes apparent that the legislature's intent was not to make the victim whole, but to ameliorate serious financial losses sustained as a result of the victim's injuries. *See Holmes v. Criminal Injuries Compensation Bd.,* 278 Md. 60, 65, 359 A.2d 84 (1976) ("[Section] 12(f)(1) requires a mandatory denial of an award to claimants who do not suffer serious financial hardship as a result of criminal activity"). The Criminal Injuries Compensation Act permits "the unreimbursed victims of crime to be compensated by funds appropriated by the state for their personal injuries

---

**3.** Alexander Pope (1688–1744), *An Essay on Criticism,* Part III, line 66; *see also* "Fools Rush In" (1940), music by Rube Bloom, lyrics by Johnny Mercer.

**4.** When the Criminal Injuries Compensation Act was proposed to the General Assembly in 1966, it was " ' "viewed at the time with great skepticism" ... the legislators felt that they would be venturing into "an uncharted area where [they] didn't have any guidelines...." ' They were also concerned about the possible costs, with estimates ranging from $1 million to $10 million per year.' " (Citations omitted.) *Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 496–97 n. 6, 331 A.2d 55, 62 n. 6 (1975).

and loss of earnings, *if* the victim would otherwise suffer serious financial hardship." *Gould,* 273 Md. at 495–96, 331 A.2d at 62.

Williams' position that the Act was intended as a panacea for damages or injuries arising from crime cannot be reconciled with its legislative purpose. Although the Act is based on a " 'welfare-theory' of compensation," *Gould,* 273 Md. at 498, 331 A.2d at 63, it is not a "welfare program" in the sense that it compensates only the indigent. The purpose of the Act is to provide recompense to crime victims who otherwise will suffer serious financial hardship. "[I]n view of the exemptions applicable on determining financial hardship, a victim of more substantial means might also fall within the criterion of suffering 'serious financial hardship' if his injury results in present inability to earn income." To illustrate: a professional person who owns a well-appointed mansion, a private plane, and has savings of less than his annual net income may qualify as suffering serious financial hardship if being victimized results in the termination of his income from his profession. Comment, *Criminal Victim Compensation in Maryland,* 30 Md.L.Rev. 266, 282 (1970).

The purpose of the Act is to create a governmental benefit not otherwise available to victims of crime. That benefit extends to victims who have suffered serious financial hardship as a result of the criminal activity, but it does not necessarily embrace those who suffer serious disability. Williams' disability is most unfortunate, but fortunately it has not resulted in an enormous economic loss to him. No diminution in salary has been sustained by Williams, nor is it likely that his income will be reduced as a result of the injury. He does not, therefore, fall within the ambit of "serious financial hardship." The Board and the circuit court properly rejected Williams' claim.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.