516 A.2d 573

**Maser WILLIAMS**

v.

**CRIMINAL INJURIES COMPENSATION BOARD.**

**No. 149, Sept. Term, 1985.**

Court of Appeals of Maryland.

Nov. 7, 1986.

Mark E. Herman, Baltimore, for appellant.

C.J. Messerschmidt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Ralph S. Tyler, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

MURPHY, Chief Judge.

Maryland Code (1981 Repl.Vol.), Article 26A, entitled "Criminal Injuries Compensation Act," provides for monetary awards in certain circumstances to innocent victims of crime. This case involves a claim for benefits under the Act, sought by an individual who was criminally assaulted and as a result was blinded in one eye. The question presented is whether, under the Act's provisions, the victim is entitled to a monetary award for permanent partial disability for loss of an eye, even though he returned to work without diminution in earnings.

(1)

The "Declaration of policy and legislative intent" underlying the 1968 passage of the Act, as set forth in § 1, states:

"The legislature recognizes that many innocent persons suffer personal physical injury or death as a result of criminal acts or in their efforts to prevent crime or apprehend persons committing or attempting to commit crimes. Such persons or their dependents may thereby suffer disability, incur financial hardships or become dependent upon public assistance. The legislature finds and determines that there is a need for government financial assistance for such victims of crime. Accordingly, it is the legislature's intent that aid, care and support be provided by the State, as a matter of moral responsibility, for such victims of crime."

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Section 3 of the Act creates the Criminal Injuries Compensation Board which is empowered by § 4, among other things, to hear and determine all claims for awards. Section 7 provides:

> "An award may not be made on a claim unless the claimant has incurred a minimum out-of-pocket loss of one hundred dollars or has lost at least two continuous weeks' earnings or support. Out-of-pocket loss means reimbursed and unreimbursable expenses or indebtedness reasonably incurred for medical care, mental health counseling, funeral expenses, or other services necessary as a result of the injury upon which such claim is based."

Section 12(b) provides, with certain exceptions not here pertinent, that

> "[a]ny award made pursuant to this article shall be made in accordance with the schedule of benefits and degree of disability as specified in Article 101 [the Workmen's Compensation Act], § 36 (as it existed on July 1, 1974), § 37, and other applicable sections of the Code.... However, the term 'average weekly wages' as applied to determine the award in accordance with § 36 of Article 101, does not include tips, gratuities and wages that are undeclared on the claimant's State or federal income tax returns in the applicable years. If a claimant does not have 'average weekly wages' so as to qualify under the formula in § 36 of Article 101, the award shall be in an amount equal to the arithmetic average between the maximum and minimum awards listed in the applicable portion of that section."[1]

Section 12(f)(1) and (2) provide:

> "(f)(1) If the Board ... finds that the claimant will not suffer serious financial hardship, as a result of the loss of

---

1. Section 36 of Art. 101 provides for payment of workmen's compensation benefits to persons "entitled to receive" such benefits. Section 36(3) and (4) deal with permanent partial disability from specific anatomical losses, *e.g.,* fingers, arms, legs, and eyes, with mutilations

earnings or support and the out-of-pocket expenses incurred as a result of the injury, if not granted financial assistance pursuant to this article to meet the loss of earnings, support, or out-of-pocket expenses, the Board ... shall deny an award. In determining the serious financial hardship, the Board ... shall consider all of the financial resources of the claimant....

(2) The conditions of paragraph (1) of this subsection shall not apply in determining an award under paragraphs (4), (5), and (6) of § 5(a) of this article."[2]

### (2)

Maser Williams was criminally assaulted on January 22, 1982 and thereafter filed his claim for benefits under the Act. Following a hearing, the Board, on June 30, 1984, awarded Williams $2,139.23 for unreimbursed medical expenses and $398.97 for 2 weeks and 3 days' temporary total disability, representing lost time from work. The Board declined to make an award for permanent partial disability for the loss of Williams' eye, concluding that because he "returned to work with no diminution in earnings, ... [he] does not have a serious financial hardship as is required by

---

and disfigurations, and with "other cases" of permanent partial disability not involving specifically enumerated anatomical disabilities.

**2.** Paragraphs (4), (5), and (6) of § 5(a) read as follows:

"(4) Any person who is injured or killed while trying to prevent a crime or an attempted crime from occurring in his presence or trying to apprehend a person who has committed a crime in his presence or had, in fact, committed a felony.

(5) A surviving spouse or child of any person who dies as a direct result of trying to prevent a crime or an attempted crime from occurring in his presence or trying to apprehend a person who had committed a crime in his presence or had, in fact, committed a felony.

(6) Any person dependent for his principal support upon any person who dies as a direct result of trying to prevent a crime or an attempted crime from occurring in his presence or trying to apprehend a person who had committed a crime in his presence or had, in fact, committed a felony."

Section 12(f) of the Statute for an award for his alleged permanent partial disability."

On appeal to the Circuit Court for Baltimore City, Williams maintained that § 12(b) required a monetary award for permanent partial disability in accordance with the schedule of benefits set forth in § 36(3) of Article 101—for the loss of an eye, 250 weeks of compensation based on Williams' average weekly wage computed under the payment formula contained in § 36(3)(c). While conceding that § 12(f)(1) requires a showing of serious financial hardship as a prerequisite to an award, Williams argued that he made such a showing, as indicated by his award for medical expenses and lost earnings. Having once been made, Williams maintained that serious financial hardship need not again be separately demonstrated as to his permanent impairment and claim for permanent partial disability.

The circuit court affirmed the Board's order and on further appeal the Court of Special Appeals affirmed the judgment of the circuit court. *Williams v. Criminal Injuries Comp. Bd.*, 65 Md.App. 486, 501 A.2d 105 (1985). In concluding that Williams was not entitled to an award for permanent partial disability in the absence of present economic loss, the intermediate appellate court read § 1 of the Act, setting forth the legislative declaration of policy and intent, in conjunction with § 12(f)(1), deeming it apparent therefrom "that the legislature's intent was not to make the victim whole, but to ameliorate serious financial losses sustained as a result of the victim's injuries." 65 Md.App. at 491, 501 A.2d 105. Writing for the court, Chief Judge Gilbert held that § 12(f)(1) mandates a denial of an award where the victim does not suffer serious financial hardship as a result of the criminal activity. Nothing in the Act, the court said, "was intended as a panacea for damages or injuries arising from crime," but rather the Act's purpose was "to provide recompense to crime victims who otherwise will suffer serious financial hardship." *Id.* at 492, 501 A.2d 105. Upon Williams' petition, we granted certiorari to consider the important issue raised in the case.

(3)

We first reviewed the history of the Act and its various provisions in *Criminal Inj. Comp. Bd. v. Gould*, 273 Md. 486, 331 A.2d 55 (1975). At that time, we observed that Maryland was but the fifth state "to establish a program permitting the unreimbursed victims of crime to be compensated by funds appropriated by the state for their personal injuries and loss of earnings, if the victim would otherwise suffer serious financial hardship."[3]  273 Md. at 495–96, 331

---

**3.** Modern compensation programs for crime victims began in New Zealand in 1963, H. Edelhertz and G. Geis, *Public Compensation to Victims of Crime* (Praeger 1974) at 11, Great Britain in 1964, *id.,* California in 1965, *id.* at 76, 82, New York in 1966, *id.* at 35, Hawaii in 1967, *id.* at 135, and Massachusetts in 1967, *id.* at 109.

All but six states now have some form of criminal victim compensation statutes.  *See* Ala.Code (1975, 1982 Repl.Vol., 1985 Cum.Supp.) § 15–23–1 *et seq.;* Alaska Stat. (1962, 1985 Supp.) § 18.67.010 *et seq.;* Ariz.Rev.Stat.Ann. (1985 Repl.Vol.) §§ 41–2401.01 and 41–2402 (mandate for adoption of implementing rules); Ark.Stat.Ann. (1947, 1977 Repl.Vol., 1985 Cum.Supp.) § 43–2356 (restitution fund); Cal.Gov't Code (West 1980, 1986 Cum.Supp.) § 13959 *et seq.;* Colo.Rev.Stat. (1973, 1982 Repl.Vol., 1985 Cum.Supp.) § 24–4.1–100.1 *et seq.;* Conn. Gen.Stat. (1985) § 54–201 *et seq.;* Del.Code Ann. (1974, 1979 Repl.Vol., 1984 Cum.Supp.) tit. 11, § 9001 *et seq.;* Fla.Stat.Ann. (West 1985, 1986 Cum.Supp.) § 960.001 *et seq.;* Ga.Code Ann. (1982, 1985 Cum.Supp.) § 28–5–100 *et seq.;* Hawaii Rev.Stat. (1976 Repl.Vol., 1984 Cum.Supp.) § 351–1 *et seq.;* Idaho Code (1949, 1973 Repl.Vol., 1986 Cum.Supp.) § 72–1001 *et seq.;* Ill.Ann.Stat. (Smith-Hurd 1986 Cum.Supp.) ch. 70, § 71 *et seq.;* Ind.Code Ann. (Burns 1983 Repl.Vol., 1986 Cum.Supp.) § 16–7–3.6–1 *et seq.;* Iowa Code Ann. (West 1979, 1986 Cum.Supp.) § 912.1 *et seq.;* Kan.Stat.Ann. (1985) § 74–7301 *et seq.;* Ky.Rev.Stat. (1972, 1983 Repl.Vol., 1986 Cum.Supp.) § 346.010 *et seq.;* La.Rev.Stat. Ann. (West 1982, 1986 Cum.Supp.) § 46:1801 *et seq.;* Mass.Ann. Laws (Law.Co-op. 1980, 1986 Cum.Supp.) ch. 258A, § 1 *et seq.;* Mich.Comp. Laws Ann. (1981, 1986 Cum.Supp.) § 18–351 *et seq.;* Minn.Stat.Ann. (West 1964, 1986 Cum.Supp.) § 611A.51 *et seq.;* Mo.Ann.Stat. (Vernon 1979, 1986 Cum.Supp.) § 595.010 *et seq.;* Mont.Code Ann. (1985) § 53–9–101 *et seq.;* Neb.Rev.Stat. (1943, 1981 Repl.Vol., 1984 Cum. Supp.) § 81–1801 *et seq.;* Nev.Rev.Stat. (1986) § 217.010 *et seq.;* N.J. Stat.Ann. (West 1986) § 52–4B–1 *et seq.;* N.M.Stat.Ann. (1978; 1981 Repl. Pamphlet, 1986 Cum.Supp.) § 31–22–1 (until July 1, 1985); N.Y.Exec.Law (Consol.1983, 1985 Cum.Supp.) § 620 *et seq.;* N.C.Gen. Stat. (1983 Repl.Vol., 1985 Cum.Supp.) § 15B–1 *et seq.;* N.D.Cent.Code (1985 Repl.Vol.) § 65–13–01 *et seq.;* Ohio Rev.Code Ann. (Page 1981, 1985 Cum.Supp.) § 2743.51 *et seq.;* Okla.Stat.Ann. (West 1983, 1985 Cum.Supp.) tit. 21, § 142.1 *et seq.;* Or.Rev.Stat. (1985 Repl.Vol.)

A.2d 55. Prerequisite to any award, we said, was "the incurring of 'serious financial hardship,'" the payment of benefits under the Act being "predicated upon the schedule of benefits and degree of disability reflected in the Workmen's Compensation Act." *Id.* at 496, 331 A.2d 55. In commenting upon the Act's passage, we said:

"The General Assembly, conceding an inability to ameliorate to any degree the threat of violent crime, and undertaking to assume the consequences of such crime as a public burden, on the ground of 'moral responsibility,' in enacting Art. 26A was embarking on uncharted waters in a noble social experiment without any real background data of experience. The recent nature of this type of legislation, the uncertain estimate of the volume of claims to be made under the Act, and the incalculable amount of the funds required to be appropriated for its administration confronted our lawmakers when they adopted this 'welfare-theory' of compensation. *See* Comment, *Criminal Victim Compensation in Maryland*, [30 Md.L.Rev. 266]. The statutory scheme for eligibility, the prerequisites for awards and the computation of benefits were all novel. Since the funds to be disbursed were public there can be sensed a legislative hesitancy on disbursement without some restraint." *Id.* at 498, 331 A.2d 55.

In *Holmes v. Crim. Injuries Comp. Bd.*, 278 Md. 60, 359 A.2d 84 (1976), we again emphasized that § 12(f)(1) "requires a mandatory denial of an award to claimants who do not suffer serious financial hardship as a result of the

---

§ 147.005 *et seq.;* 71 Pa.Cons.Stat.Ann. (Purdon 1962, 1986 Cum. Supp.) § 180–7 *et seq.;* R.I.Gen.Laws (1981 Repl.Vol.) § 12–25–1 *et seq.;* S.C.Code Ann. (Law.Co-op. 1985) § 16–3–1110 *et seq.;* Tenn. Code Ann. (1980 Repl.Vol., 1986 Cum.Supp.) § 29–13–101 *et seq.;* Tex.Rev.Civ.Stat.Ann. (Vernon 1967, 1986 Cum.Supp.) art. 8309–1; Va.Code (1983 Repl.Vol., 1986 Cum.Supp.) § 19.2–368.1 *et seq.;* Wash. Rev.Code (1985) § 7.68.010 *et seq.;* W.Va.Code (1985 Repl.Vol., 1986 Cum.Supp.) § 14–2A–1 *et seq.;* Wis.Stat.Ann. (West 1982, 1985 Cum. Supp.) § 949.001 *et seq.,;* Wyo.Stat. (1977, 1986 Cum.Supp.) § 1–40–101. *See also* D.C.Code Ann. (1981, 1985 Cum.Supp.) § 3–401 *et seq.;* V.I.Code Ann. (1967, 1985 Cum.Supp.) tit. 34, § 151 *et seq.;* 42 U.S. C.A. § 10601 (1986 Supp.).

criminal activity." 278 Md. at 65, 359 A.2d 84. We noted that § 12(f)(1) "specifies that serious financial hardship must result from the loss of earnings, support or out-of-pocket expenses." *Id.* The statute requires a denial of an award, we said,

"if, and only if, the Board determines that the claimant will not suffer serious financial hardship as a result of the loss of earnings or support *and* that he will not suffer such hardship as a result of out-of-pocket expenditures. If either finding cannot be made, or, in other words, if serious financial hardship does result from either the loss of earnings or support or from out-of-pocket expenses, then § 12(f)(1) does not require that the Board deny benefits. Only where no hardship results from the loss of earnings or support, or from expenditures, does § 12(f)(1) mandate the denial of an award.

"This conclusion is also supported by other language contained in § 12(f)(1) which provides that an award shall be denied where no serious financial hardship would result if the claimant is 'not granted financial assistance pursuant to this article to meet the loss of earnings, support, *or* out-of-pocket expenses.' (Emphasis supplied.) As is indicated by this provision, the types of losses necessary to sustain a finding of serious financial hardship, namely 'the loss of earnings, support, or out-of-pocket expenses,' are set forth in the disjunctive, and any one such type of loss may alone support a determination that the requisite hardship exists." *Id.* at 65, 359 A.2d 84.

\*　　\*　　\*　　\*　　\*　　\*

"The plain language of § 12(f)(1), therefore, as well as the need to harmonize that section with the various other provisions of the Criminal Injuries Compensation Act, compels the conclusion that serious financial hardship under § 12(f)(1) need not result solely from out-of-pocket expenditures, but may also occur as a result of the loss of earnings or the loss of support alone." *Id.* at 66–67, 359 A.2d 84.

In *Holmes,* we were concerned with the loss of normal domestic services for a family due to the murder of the mother, and whether the economic value of such a loss constituted a loss of "support" within the contemplation of § 12(f)(1). We concluded that such a loss was properly considered in determining whether "serious financial hardship" was incurred as a result of the victim's death. To establish such hardship, we explained, does not necessarily require a showing of out-of-pocket expenditures but may be demonstrated by a showing of loss of "support" alone, notwithstanding the absence of out-of-pocket expenses or loss of earnings. Thus, we indicated that the Board must consider loss of earnings, or support, and losses due to out-of-pocket expenses as separate items in assessing the existence of financial hardship under the statute. *Id.* at 67, 359 A.2d 84. *See also Gossard v. Criminal Inj. Comp. Bd.,* 279 Md. 309, 368 A.2d 443 (1977); *McGee v. Criminal Inj. Comp. Bd.,* 57 Md.App. 143, 469 A.2d 470 (1984).

Our cases thus make clear that it is the plain and unambiguous language of Art. 26A which must be applied in determining eligibility for an award. For example, § 7 flatly precludes any award unless the innocent crime victim has incurred minimum out-of-pocket expenditures of $100, or suffered a loss of two continuous weeks' earnings or support. Therefore, a crime victim who sustains a permanent partial disability, no matter how grievous, but who does not satisfy the minimum eligibility requirements would in no event be eligible for benefits under the Act. Moreover, under the Act's provisions, § 12(f)(1), a crime victim is not entitled to any award unless, by reason of serious financial hardship, " 'financial assistance [is required] to meet the loss of earnings, support, *or* out-of-pocket expenses.' " *Holmes, supra,* 278 Md. at 65, 469 A.2d 470 (emphasis in original). These pecuniary loss criteria clearly limit the extent to which the Board may make an award where financial need is demonstrated.

The Act makes no provision for a compensatory award for a permanent partial disability independent of the type of

pecuniary losses expressly enumerated in § 12(f)(1). Nor is there anything in § 12(b) of the Act, implicating the payment schedules of the Workmen's Compensation Act, which authorizes the Board to make any additional award to a claimant for permanent partial disability; indeed, that subsection merely establishes a framework within which the Board is to measure the maximum amount of benefits to be paid to an eligible claimant where a § 12(f)(1) award has been made. To adopt Williams' construction of the statute would be to sanction an award for a purpose and in an amount greater than that authorized by § 12(f)(1) without regard to serious financial hardship.

Of course, as the Board readily acknowledges in its brief, a permanent impairment that prevents the victim from continuing to work full time, or that necessitates a change in duties entailing a reduction in earnings, may properly be compensated under § 12(f)(1) where financial hardship is established. On the other hand, where the victim's physical impairment causes no present loss of earnings, and there is no reasonably foreseeable prospect that the permanent injury will cause any loss in the future, it is the Board's position—with which we agree—that it may not award compensation for the mere impairment itself. Should it subsequently appear that the claimant's permanent partial disability will have a greater economic impact than originally determined, the Board may, under § 4(d) of the Act, "reinvestigate or reopen" the case.

We thus conclude that the Board's function within the formulation of § 12(f)(1) is to determine the extent of the claimant's financial hardship as a result of the criminal activity. Therefore, a crime victim who demonstrates serious financial hardship by showing the requisite level of out-of-pocket expenses, and/or lost earnings, and/or loss of support, and who is compensated for those losses, is not entitled to further pecuniary recompense solely because he sustained a permanent injury, such as the loss of an eye. On the record in this case, there is no showing that Williams' permanent disability will in the future cause him

additional expenditures or loss of income for which he will have the requisite degree of financial need under § 12(f)(1).

The result we reach is consistent with the Board's interpretation of the statute and with its plain and unambiguous terms. While a well-entrenched administrative construction of a statute is entitled to no weight where the statute is without ambiguity, *Macke Co. v. Comptroller*, 302 Md. 18, 22, 485 A.2d 254 (1984), we nevertheless note numerous synopses of claim dispositions made by the Board and reported in its annual reports in cases involving permanent partial disability. In the Board's *Second Annual Report* (1971), for example, the Board noted at 23, in adjudicating Claim No. 64–P–70, that it "has repeatedly held that an anatomical disability without the showing of serious financial hardship, such as a loss of or diminution in earnings or an actual out-of-pocket loss, is not compensable under the statute." A number of the synopsized cases involved injuries to or loss of eyes. While the synopses are sketchy at best, in some of these cases the Board expressly stated that a disability award would not be made where the claimant had returned to work with no diminution in earnings (Claims 120–P–70, 85–P–71, 18–P–72, 208–P–74, 156–P–75, 184–P–75, 236–P–75, 259–P–78, 208–P–79, 29–P–82). In other cases the Board noted that there had been no diminution of earnings but did not expressly premise a denial of a disability award on the return to work (Claims 20–P–69, 62–P–69, 91–P–70, 286–P–70, 125–P–71, 18–P–72, 323–P–72, 551–P–83).

Consistent with these dispositions, General Assembly Delegate Dennis McCoy, a former Board member, made these observations in *Compensation for Victims of Crime*, 8 Md.Bar J. 28, 30 (1976):

"[M]any claims have been presented to the Board which do not result in a meaningful award. For example, many individuals who receive benefits under comprehensive health and accident insurance policies which pay the cost of medical treatment rendered for injuries received as the direct result of a criminal act and who are covered under

salary continuation agreements or insurance contracts which pay loss of earnings while they are unable to work, do not suffer the required 'financial hardship' and do not receive compensation. Indeed, many claims have been filed by individuals who have suffered the loss of eyes, ears, hearing or sustained stab and gun shot wounds but who fall in the aforementioned categories and who, upon recovery, return to their previous employment at no diminution in earnings and are, therefore, excluded from meaningful recovery under this act. In these instances, the only recovery may be a minimal award for mutilation and disfigurement."

The criminal victim compensation statutes in other jurisdictions, *see* n. 3, *supra,* have widely varying coverage and eligibility provisions and are, therefore, of little utility in interpreting the Maryland Act. We note, however, that six states have adopted the Uniform Crime Victims Reparations Act, formulated by the National Conference of Commissioners on Uniform State Laws; that Act does not compensate " 'pain, suffering, inconvenience, physical impairment, and other nonpecuniary loss.' "[4] *See* P.F. Rothstein, "How the Uniform Crime Victims Reparations Act Works," 60 American Bar Association Journal 1531, 1532 (1974). On the other hand, unlike Maryland, the statutes of other states, apparently on a tort theory of liability, permit recovery for the pain and suffering of the crime victim. *See, e.g., Application of Edmundson,* 63 Hawaii 254, 625 P.2d 372, 375 (1981); *Ayers-Schaffner v. Solomon,* —— R.I. ——, 461 A.2d 396 (1983). The New York statute, upon which the Maryland statute was patterned, *see Gould, supra,* 273 Md. at 797, 331 A.2d 55, limits awards to actual economic losses based on serious financial hardship. *See Regan v. Crime Victims Compensation Bd.,* 57 N.Y.2d 190, 455 N.Y.S.2d 552, 441 N.E.2d 1070 (1982); *Rigaud v. Crime Victims*

---

4. *See* Unif. Crime Victims Reparations Act, 11 U.L.A. 33 (1973). The states which have adopted the Act are Kansas, Louisiana, Montana, North Dakota, Ohio, and Texas.

*Compensation Bd.*, 461 N.Y.S.2d 840, 94 A.D.2d 602 (1983); *Gryziec v. Zweibel*, 426 N.Y.S.2d 616, 74 A.D.2d 9 (1980). The Virginia statute, which contains significantly more liberal provisions than our own, recently was construed to permit a full 100–week award for loss of an eye even though the claimant's financial hardship was limited to nine weeks' actual loss of time from work. *See Marchand v. Div. of Crime Victims Comp.*, 230 Va. 460, 339 S.E.2d 175 (1986).

In view of the provisions of the Maryland Act, and considering the circumstances of this case as disclosed by the record, we hold that the Board properly limited its award to Williams to amounts which did not exceed his out-of-pocket expenses and lost earnings.

JUDGMENT AFFIRMED WITH COSTS.