669 A.2d 195

**MONKTON PRESERVATION ASSOCIATION, et al.**

v.

**GAYLORD BROOKS REALTY CORPORATION.**

No. 494, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Jan. 2, 1996.

J. Carroll Holzer (Holzer and Lee, on the brief), Towson, for Appellants.

G. Scott Barhight (David K. Gildea and Whiteford, Taylor & Preston, on the brief) Towson, for Appellee.

Argued before WILNER, C.J., and MOYLAN and WENNER, JJ.

WILNER, Chief Judge.

This appeal involves the review process required of the Baltimore County Board of Appeals. Appellants argue that, on appeal from a hearing officer's decision on a development plan, the Board of Appeals must conduct a *de novo* hearing, or at a minimum, the Board must make an "independent evaluation" of the record. Appellants also raise several procedural issues in which prejudice is alleged. We find no merit to their assertions and shall therefore affirm the judgment of the Circuit Court for Baltimore County.

## BACKGROUND

The controversy originated in November 1992, when the Gaylord Brooks Realty Corporation held a concept plan conference for the development of a 15 lot residential subdivision of single family dwellings on 85 acres of land zoned RC–4. The proposed development, known as Magers Landing, is located on the north side of Monkton Road at its intersection with Piney Hill Road in northern Baltimore County. Pursuant to County Code, Title 26, Article 5, "Development Regulations", the concept plan was submitted to the community for comment at a Community Input Meeting. On December 31, 1992, a development plan for the project was filed in Baltimore County, comments were submitted by the appropriate agencies, and a revised development plan incorporating those comments was presented to a hearing officer on February 10, 1993.

At the preliminary stage of the hearing, Gaylord Brooks Realty and the represented Baltimore County agencies re-

sponded that there were "no unresolved comments or conditions which needed to be addressed." Appellants had various concerns about the proposed development, however. They complained that stormwater management had been waived by Baltimore County for the proposed project and that such a waiver would have a negative environmental impact on the surrounding properties and the nearby Gunpowder River, that the development "involves" buildings on Baltimore County's Landmarks Preservation List, that Baltimore County Code § 26–207 requires a hearing officer to refer such a plan to the Planning Board to consider the impact of the proposed development upon the landmark, and that the development plan was procedurally incomplete.

Following five full days of hearings, the hearing officer issued a 63–page detailed opinion and order approving the plan. A condition to the approval was that the case was to be "remanded to the Department of Environmental Protection and Resource Management (DEPRM) for their reconsideration of the appropriateness of the waiver of storm water management quantity which was granted to this Developer." DEPRM reaffirmed that waiver, following which the hearing officer entered an amended order approving the plan.

Appellants appealed the hearing officer's decision to the Board of Appeals, which met to consider the appeal on October 6, 1993. Regarding itself as sitting in an appellate capacity, the Board declined to take additional testimony and instead gave deference to the decision of the hearing officer, ultimately affirming his decision. Appellants then sought judicial review in the Circuit Court for Baltimore County, which affirmed the decision of the Board of Appeals. This appeal ensued.

### STANDARD OF REVIEW

We consider initially the standard of review that the Baltimore County Board of Appeals must apply when reviewing cases from a hearing officer. Appellants contend that, even though there are two strata of administrative hearings, the

County Board of Appeals must conduct hearings *de novo,* or in the alternative, must make, upon the hearing officer's record, its own "independent evaluation."

In determining whether the County Board of Appeals must conduct a *de novo* hearing, we must first review the language of Md.Code, art. 25A, § 5(U), which authorizes chartered counties to establish a board of appeals and provides that such a board, if created, shall render a decision

"on petition by any interested person and after notice and opportunity for hearing *and on the basis of the record before the board,* of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for zoning variation or exception or amendment of a zoning ordinance map.... *Provided, that upon any decision by a county board of appeals it shall file an opinion which shall include a statement of the facts found and the grounds for its decision.*"

(Emphasis added.) Baltimore County, a chartered county, availed itself of the power to create a board of appeals in § 601 of the Baltimore County Charter.

Baltimore County Charter § 603 sets forth the rules of practice and procedure for the Board of Appeals. It states that "[a]ll hearings held by the board shall be heard de novo, unless otherwise provided by legislative act of the County Council." The County Council did enact such legislation. County Code § 26–209, dealing specifically with appeals from a final action on a development plan, states in subsection (c):

"The board shall conduct a proceeding under this section by hearing oral argument of the parties and by receiving written briefs, if requested by any party to the proceeding. At the board's direction, additional evidence and testimony may be allowed."

Section 26–209(c), therefore, expressly excludes appeals of this kind from the requirement of a *de novo* hearing.

Appellants argue that § 5(U) at least implicitly requires a *de novo* hearing before the Board of Appeals and that § 26–209(c), to the extent it permits something less, is invalid as being in conflict with the supervening State law. They point to two provisions in § 5(U) to support that proposition—the statements that the Board is to render a decision "on the basis of the record before the board" and that the Board must file an opinion including a "statement of the facts found and the grounds for its decision."

We noted in *General Motors Corp. v. Bark,* 79 Md.App. 68, 79, 555 A.2d 542 (1989), that "[a] true trial *de novo,* of course, puts all parties back at 'square one' to begin again as if the adjudication appealed from had never occurred." We see nothing in § 5(U) requiring that approach—of essentially disregarding the full evidentiary hearing conducted by a hearing officer and trying the whole case anew, and we are aware of no appellate holding to the contrary.

The reference to the decision being based on the record before the board is somewhat ambiguous, but where the evidentiary record made before the hearing officer is, in fact, before the Board, a decision based on that record can be viewed as being based on the record before the Board. Indeed, the Court adopted essentially that approach in *People's Counsel v. Crown Development,* 328 Md. 303, 614 A.2d 553 (1992). The same argument made here was made in that case—that § 603 of the County Charter, when combined with a county ordinance allowing the Board of Appeals to consider an appeal on the record, was in contravention of § 5(U)—and it was rejected. The Court held that the procedure followed in the case—considering the record made below with such additional evidence as the Board chose to allow—was "not in conflict with express powers granted by the State." *Id.* at 316, 614 A.2d 553.

Having reached that conclusion based on the administrative structure and procedure then in effect, the Court noted that

the procedure had been changed to that now before us. It stated, however, at 317 n. 3, 614 A.2d 553:

"We note in passing that the Baltimore County Council has significantly revamped the procedure for consideration of development plans. Under the revised procedure, interested persons may participate in a community input meeting, after which a hearing is held by a hearing officer. The decision of the hearing officer may be appealed to the Board of Appeals, *which may decide the case on the record made by the hearing officer or, in its discretion, may receive additional evidence.* A limited scope of review by the Board of Appeals is mandated. Bill No. 1–92, effective March 2, 1992."

(Emphasis added.) We must assume that the Court of Appeals had a good reason for including that footnote, which was not necessary to resolve the case then before it.

■ Although a *de novo* hearing is clearly not required, the question remains whether the "limited scope of review" that the *Crown* Court makes brief reference to requires an "independent evaluation" of the record or permits the County Board of Appeals to apply a more deferential standard of review.

We note that the Court of Appeals addressed a similar issue in *Board of Educ. of P.G. Co. v. Waeldner,* 298 Md. 354, 470 A.2d 332 (1984). In *Waeldner,* the Court considered the standard of review to be applied by the State Board of Education in an appeal from a decision of the County Board of Education dismissing a tenured teacher. After first recognizing that the Administrative Procedure Act did not "delineate the applicable scope of review where one administrative agency is empowered to determine an 'appeal' from the decision of another administrative agency," *id.* at 361 n. 2, 470 A.2d 332, the Court held that

"the legislature did not intend that the State Board's review of the County Board's action in such cases would be restricted to mere determination on the record made before the County Board of whether there was competent and substan-

tial evidence to support that agency's factual determination. On the contrary, we think it evident from the statutory scheme of the Education Article, and the allocation of powers between the State and County Boards, that the legislature intended that the State Board would *exercise its independent judgment on the record before it* in determining whether disciplinary infractions, as charged, had been established...."

(Emphasis added.) *See also, School Comm'rs v. James,* 96 Md.App. 401, 625 A.2d 361, *cert. denied,* 332 Md. 382, 631 A.2d 452 (1993).

There is a significant difference between the role of the State Board of Education *vis a vis* county boards and that of the Board of Appeals in reviewing development plans. As the *Waeldner* Court pointed out, the appellate review process of the State Board of Education is part of that Board's broad visitatorial power over the State public school system. Because it is quintessentially a policy-making body, its reviewing authority "is not narrowly focused, as in judicial review of administrative agency decisions...." *Id.* at 362, 470 A.2d 332. A county board of appeals is not intended to be that kind of policy-making body; at least with respect to reviewing development plans, it is not vested with broad visitatorial power over other county agencies, but acts rather as a review board, to assure that lower agency decisions are in conformance with law and are supported by substantial evidence.

Art. 25A, § 5(U) does require a county board of appeals "to file an opinion which shall include a statement of the facts found and the grounds for its decision." Appellants interpret that statement to require, at a minimum, a county board of appeals to conduct an "independent evaluation" of the record from a hearing officer and not simply act as an appellate body. We disagree. The language does not necessitate an "independent evaluation" to be made. The legislature left the door open for chartered counties to enact their own standard of review for their boards of appeal.

In that regard, County Code § 26–209(d)(3) provides that the Board may:

"Reverse or modify the decision if a finding, conclusion or decision of the hearing officer:

(a) Exceeds the statutory authority or jurisdiction of the hearing officer;

(b) Results from an unlawful procedure;

(c) Is affected by any other error of law;

(d) Is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(e) Is arbitrary or capricious."

The first three of these reasons involve errors of law, and, as to them, no deference is due to the hearing officer. The Board clearly must make its own independent evaluation. That is also true with respect to paragraph (e)—whether the hearing officer's decision is arbitrary or capricious. When it comes to reviewing the factual basis for the hearing officer's decision, however, the standard is the traditional one of looking only to whether there is substantial evidence to support the findings. In that examination, the Board does *not* make independent evaluations, for to do so would require the Board to make credibility decisions without having heard the testimony.

This is *not*, as appellants argue, inconsistent with art. 25, § 5(U). That section requires the Board to support its decision with specific written findings of fact and conclusions of law. "This requirement is in recognition of the fundamental right of a party to a proceeding before an administrative agency to be apprised of the facts relied upon by the agency in reaching its decision and to permit meaningful judicial review of those findings." *Harford County v. Preston,* 322 Md. 493, 505, 588 A.2d 772 (1991). The Board can comply with that requirement by filing an opinion that includes the statement of the facts found and the grounds for its decision. One of the facts required to be found is that substantial evidence exists in

the record to support the findings of the hearing officer, and, upon that determination, the Board may affirm those findings.

■ In addition to the petition and its exhibits, the Board had before it all of the exhibits that were filed in the proceedings below and a copy of the testimony and the numerous comments given by the various County agencies. Although it gave deference to the hearing officer's determinations of credibility of the witnesses, the Board found that the decision to approve the plan was supported by competent, material, and substantial evidence and that the hearing officer did not act in any arbitrary or capricious manner. As a result, the facts found by the hearing officer were adopted by the Board. Accordingly, the standard of review applied by the County Board of Appeals was proper.

### TESTIMONY OF JAMES PATTON

■ The issue of the waiver of stormwater management was clearly considered by the hearing officer. As part of the development plan's approval, the hearing officer required DEPRM to reassess the waiver of stormwater management. After DEPRM reaffirmed the waiver, the hearing officer issued an amended order approving the development plan.

James Patton, an engineer, testified for appellants before the hearing officer on the issue of the waiver of stormwater management. Subsequent to the hearing, Mr. Patton located a Baltimore County Soil Conservation report that recommended denial of the waiver, and he wished to testify with respect to that report before the Board of Appeals. Appellants argue that disallowing that testimony constituted error.

Section 26–209(c) provides the Board of Appeals with discretion to allow additional evidence into testimony. The Board of Appeals had a proffer as to what Mr. Patton's testimony would have been were he permitted to testify. Given the in-depth consideration of this issue by the hearing officer and the proffer before the Board of Appeals, it was within the Board's discretion to deny the request for additional testimony at the hearing.

## LANDMARKS PRESERVATION LIST

■ Baltimore County Code, § 26–207(a)(3) requires a hearing officer to refer a development plan to a Planning Board when "[t]he plan involves a building, structure or site included on the landmarks preservation commission preliminary or final list or is located within a Baltimore County historic distric.." Although the development plan is not located within a Baltimore County historic district, appellants argue that the development plan "involves" landmark buildings because such structures are nearby to the Magers Landing site.

The term "involves" is not defined in BCZR. When a term is not specifically defined, it "shall have the ordinarily accepted definition as set forth in the most recent edition of Websters Third New International Dictionary of the English Language, Unabridged." BCZR, § 101. Websters defines the term "involves" as follows: "to envelop", "to draw in as a participant", "to have within or part of itself", and "to engross or occupy fully." In light of that definition, the hearing examiner considered whether the development plan "involves" such a building. There was competent evidence before the hearing officer that the plan did not "involve" landmark buildings and that it was not necessary for the matter to be referred to the Planning Board. The Landmarks Preservation Commission itself did not recommend that this development be referred to the Planning Board. The hearing examiner stated in his opinion at 49:

"I do not find that this development involves such a building or structure. The fact that a historic structure or building might exist nearby, or, as Mr. Holzer argues in his Memorandum, within three miles of this site, is not a sufficient reason to refer the matter to the Planning Board."

We agree with the hearing officer and the County Board of Appeals that this matter did not "involve" such a building.

## MASTER PLAN CONFLICT

■ Baltimore County Code, § 26–207(a) states that "[t]he hearing officer shall refer the plan to the planning board in

the following circumstances: (1) The proposed plan conflicts with the master plan. . . ." After reviewing the master plan and the proposed development plan, the hearing officer stated in his opinion at 51:

"This development has been proposed pursuant to Bill No. 113–92 and according to all of the Baltimore County agencies who reviewed this project, satisfies the requirements and dictates of that Bill. I do not believe and will therefore find that a conflict does not occur with the Master Plan. This matter does not need to be referred to the Planning Board, pursuant to Section 26–207(a)(1).

Again, I am not alone in my thinking. The Planning Office also was of the opinion that the matter did not need to be referred to the Planning Board. The Planning Office found that there was not a conflict with the Master Plan and that the matter did not need to be referred to the Planning Board."

There was ample evidence before the hearing officer to substantiate his opinion. The development plan conforms to the principles and guidelines of the master plan.

## COMPLETENESS OF THE DEVELOPMENT PLAN

Appellants provide numerous examples in which they claim that the development plan was procedurally incomplete and that the plan violated the guidelines of BCZR, § 1A03.5 which governs the performance standards for rural cluster developments in an RC–4 zone.

Appellants allege, in part, that the ground water study was not proper, that the conservancy area was not in compliance, and that the soil evaluation was not appropriate. After reviewing BCZR, § 1A03.5 and the development plan, we conclude that the plan conformed to the standards of BCZR, § 1A03.5.

With respect to the procedural completeness of the plan, the hearing officer made the following statement in his opinion at 37:

"The hearing before me is not a hearing for the issuance of building permits for any of the proposed lots in Magers

Landing. The Development process must proceed in different steps and phases. Common sense dictates that it must proceed in this fashion. The Developer must have an approved plan to work with and to rely upon in order to proceed with his investment. Therefore, it is obvious that the various departments of Baltimore County must continue with their review of this plan as the developer gets closer to the actual construction phase. It is an ongoing process that continues past this Hearing Officer's hearing."

We agree with this conclusion. The development process is indeed an "ongoing process," and the hearing officer's affirmation of the plan is just the first step. This conclusion is supported by Baltimore County Code, § 26–206($l$), which states:

"All subsequent detailed development plans such as the final grading and sediment control plan, stormwater management plan, landscape plan, and record plat shall be sealed and certified as being in accordance with the approved development plan."

For the above-mentioned reasons, we affirm the judgment of the circuit court.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.