917 A.2d 166

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY, Maryland et al.**

v.

**ELM STREET DEVELOPMENT, INC.**

**No. 9 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

March 2, 2007.

692

J. Carroll Holzer, Peter M. Zimmerman (Carole S. Demilo, on the brief), Towson, MD, for Appellants.

Thomas H. Bostwick (John E. Beverungen, County Atty., on the brief), Towson, MD; Joseph R. Woolman, III (Gildea & Schmidt, LLC, on brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, KRAUSER, CHARLES E. MOYLAN, JR. (Ret'd Spec. Assigned) JJ.

KRAUSER, Judge.

Appellants are People's Counsel for Baltimore County; Maryland Line Area Association; Richard McQuaid; and Marion V. Runkles, III.[1] Appellees are Elm Street Development, Inc. ("Elm Street") and Baltimore County. The Baltimore County Board of Appeals approved Elm Street's development plan for a parcel of land known as the "Miller–Tipper property," based in part on two County agencies' recommendations that the plan complied with the relevant zoning regulations. When the Circuit Court for Baltimore County affirmed the decision, appellants noted this appeal, arguing that the Board erred in not requiring the County agencies to lay out the "facts and reasons" behind their recommendations. Appellants also noted an appeal regarding a related development plan from Elm Street.

To fully understand the questions raised on appeal, a brief review of the Baltimore County plan approval process is required before we proceed with our analysis.

## PLAN APPROVAL PROCESS

In Baltimore County, the process of obtaining approval for a development plan begins with the filing of a concept plan which, among other things, "[g]enerally compl[ies] with county regulations and standards" and which will be reviewed at a Concept Plan Conference involving the developer and the relevant County agencies. Baltimore County Code (2003) §§ 32–4–211—32–4–216. After that review, the Department of Permits and Development Management ("PDM") holds a Community Input Meeting to allow "[r]esolution of community concerns and developer constraints within the context of . . . county regulations and policies." Code § 32–4–217. Participants may include "representatives of the county, the [developer], owners of adjacent property, and representatives of local community associations or umbrella groups." Code

1. Maryland Line Area Association, McQuaid, and Runkles adopted by reference the brief, appendix and joint record extract submitted by People's Counsel.

§ 32–4–101(*l*). Any relevant comments raised or conditions proposed that are not resolved at the Community Input Meeting must be "[a]ddress[ed]" by the appropriate agency and submitted to the hearing officer. Code § 32–4–217(e)(3). Only after participating in the Community Input Meeting can the developer file a development plan. Code § 32–4–221.

The development plan must not be "inconsistent" with the concept plan unless the inconsistencies are "related to the outcome of the [C]ommunity [I]nput [M]eeting." Code § 32–4–225. Otherwise, another Community Input Meeting must be held on the plan. *Id.*

The development plan, too, must undergo a process of review. As part of that review, County representatives must visit the property involved. Code § 32–4–226(a). And County agencies, such as PDM, the Office of Planning, and the Department of Environmental Protection and Resource Management ("DEPRM"), must review the plan for compliance with County regulations. Code § 32–4–226(b). After that has occurred, the developer and the relevant County agencies attend a Development Plan Conference, which the Community Input Meeting participants may also attend. Code § 32–4–226(c)(1). The Development Plan Conference provides the parties with an opportunity to resolve "any conflict between agency comments" and "any comments raised or conditions proposed at the [C]ommunity [I]nput [M]eeting." Code § 32–4–226(c)(2). These comments and conditions are available to the public upon request. Code § 32–4–227(c)(3).

Finally, after the Development Plan Conference is held, the plan goes before a hearing officer for a "public quasi-judicial hearing." Code § 32–4–227(a). Before the hearing, the County agencies must submit, among other things, any agency comments on the development plan as well as agency responses to any "unresolved comments raised or conditions proposed or requested" at the Community Input Meeting. Code § 32–4–226(d). During the hearing, the hearing officer is required to "consider any comments and conditions submitted by a county agency," Code § 32–4–227(e)(1), and to "take testimony

and receive evidence regarding any unresolved comment or condition," Code § 32–4–228(a)(1). But, "[i]f no comments or conditions are received by the [h]earing [o]fficer," the development plan "shall be considered to be in compliance with county regulations." Code § 32–4–227(e)(2).

The hearing officer then issues a "final decision" on the development plan. Code § 32–4–229(a)(1). The hearing officer "shall grant approval" of a development plan which "complies with these development regulations and applicable policies, rule and regulations." Code § 32–4–229(b)(1). The hearing officer's final decision may be appealed to the Board. Code § 32–4–227(b)(2). The Board's decision, in turn, may be reviewed by the circuit court. Maryland Rule 7–202.

## ELM STREET'S REVISED RED–LINED DEVELOPMENT PLAN

Elm Street sought to develop the approximately 72.47 acre Miller–Tipper property into a residential subdivision of 14 single-family dwellings. Because the property was zoned RC–4 under the Baltimore County Zoning Regulations (1998) ("BCZR"), the development plan for the property had to designate a "minimum of 70%" of the property as a "conservancy area." BCZR § 1A03.5. The conservancy area was to include certain "features," such as wetlands and steep slopes, to be developed "as determined by the standards contained in the Comprehensive Manual of Development Policies;" the Director of the Office of Planning and the Director of DEPRM were to determine whether these requirements were met. BCZR § 1A03.5(A). Under the BCZR, the property was also required to be "held in unified ownership and control." BCZR § 1A03.5(C). Before work could commence on the property, Elm Street had to obtain the County's approval of its development plan.

In accordance with the County's procedures, Elm Street filed a concept plan for the property. After it was reviewed at the Concept Plan Conference, a Community Input Meeting was held which allowed residents of the locality to review and

comment on the proposal. Elm Street then submitted a development plan to PDM, which was reviewed by the County agencies and discussed at the Development Plan Conference. Finally, the plan was submitted to the hearing officer—the County Zoning Commissioner—for a decision. During the ensuing three-day hearing before the hearing officer, County agencies and members of the community had the opportunity to comment on the plan and suggest conditions to be imposed upon it.

At that time, PDM, the Office of Planning, and DEPRM expressed concern that the property had two conservancy areas with two different owners, which they claimed was prohibited in an RC–4 zoned property. The hearing officer agreed and determined, among other things, that the "two conservancy areas proposed in this case, under different ownership, are simply not permitted," absent "compelling factors," under § 1A03.5(C). He therefore denied approval of the development plan as well as Elm Street's subsequent request that he reconsider that decision.

Elm Street appealed the hearing officer's decision to the Board. The Board reversed the hearing officer's decision and approved the plan, finding that the proposed conservancy area satisfied the requirements of § 1A03.5(C) because the regulation permitted dual ownership of the conservancy area even without there being any "compelling interests."

Challenging that decision, appellants petitioned the circuit court for judicial review. The circuit court found that, while the Board was correct in holding that "separate ownership" of the conservancy area was "permissible," the two parcels in the plan still had to be "under the control of one entity, that is, there must be 'unified control'" under § 1A03.5(C). Moreover, because the record was also silent as to "whether the proposed conservancy area include[d] the features set forth in [§ 1A03.5(A)]," the circuit court found that there was a lack of "substantial evidence" that Elm Street had satisfied the requirements of §§ 1A03.5(A) and (C). It therefore remanded the case for the Board to determine two matters: whether the

Directors of the Office of Planning and DEPRM determined that "the proposed area complie[d] with the regulation and standards" under § 1A03.5(A), and whether the conservancy area would be held under "unified control," as required under § 1A03.5(C). The Board, in turn, remanded the case to the hearing officer for him to first address those issues.

After the circuit court issued its decision, Elm Street submitted a revised red-lined development plan to the Office of Planning and DEPRM, showing the conservancy area now to be a single area under the sole ownership of Glen Arm Homes, LLC. Upon review of this plan, the Directors of the Office of Planning and DEPRM informed the hearing officer, in their written "recommendations," that they had determined that the sole ownership of the conservancy area by Glen Arm Homes, LLC made the plan "acceptable" under the requirements of § 1A03.5(C). The Directors also determined that the conservancy area met the "[p]erformance standards for rural cluster development" as required under § 1A03.5(A).

After a hearing, the hearing officer found that the circuit court's remand order was satisfied by the revised red-lined development plan and the written recommendations of the Directors of the Office of Planning and DEPRM, which "clearly and unambiguously set out the positions of the two County Departments, and resolved the issues identified by [the circuit court]." Having so found, he determined that "oral testimony was ... unnecessary," further pointing out that the recommendations "were offered into evidence and received without objection" and that "representatives of the[] two County agencies were present at the hearing to address any concerns or questions by any party." Since the revised red-lined plan satisfied the circuit court's order and complied "with all applicable requirements and standards" of the "development review regulations" of the "County Code, the BCZR and all other [relevant] policies, standards and requirements," the hearing officer approved the development plan.

Appellants appealed the hearing officer's decision to the Board. The Board agreed with the hearing officer and found

that the circuit court's remand order had been satisfied by the revision to the development plan creating "one single lot which was owned by Glen Arm Homes, LLC" and by the recommendations submitted by the Directors of the Office of Planning and DEPRM. The Board observed that appellants could have "presented witnesses" or questioned the agency representatives, who were present at the hearing. By failing to do so, "they accepted," the Board found, "the recommendations of the two agencies." The Board concluded that, since neither the County agencies nor anyone present "raised [any] issues with respect to the property," it had "no basis for overturning or remanding" the hearing officer's decision.

Appellants then petitioned the circuit court for review of the Board's decision. Agreeing with the Board's conclusion, the circuit court found that the revised red-lined development plan "resolved" the issue of "unified ownership and control" under § 1A03.5(C),[2] and that the recommendations issued by the Directors of the Office of Planning and DEPRM resolved the issue of compliance with the conservancy area requirements of § 1A03.5(A).

In so ruling, it rejected appellants' argument that the agencies had to provide "reasons for determining that the conservancy area [met] the applicable standards," stating that "[n]o case law, statute or regulations requires that reasons for such approvals be stated." [3] And, since "[n]o evidence was presented to the [h]earing [o]fficer" that the recommendations from the Office of Planning and DEPRM "were not reasonably based on facts proven," the circuit court held that "the [h]earing [o]fficer and [the Board's] approval[s] of the [revised

---

**2.** The circuit court also rejected appellants' claim that they were "entitled to know what Glen Arm Homes, LLC intend[ed] to do with the property in the future so they will know who will be in control of the property if it is transferred" because appellants presented "[n]o statutory authority nor case law" in support of their argument. This claim was not raised on appeal.

**3.** The circuit court, however, stated in a footnote that it "[did] not decide whether reasons must be stated if approval is withheld."

red-lined] development plan [were] reasonably based on the facts proven." It therefore affirmed the Board's decision.

## ELM STREET'S REFINED DEVELOPMENT PLAN

While appellants' petition for judicial review regarding the original plan was pending in the circuit court, Elm Street filed a request for approval of a "Plan Refinement" of the original plan with the Development Review Committee ("DRC"). The refinement involved the "removal of a lot line in the proposed conservancy area."

Upon review, DRC recommended approval of the refinement. PDM adopted the DRC's recommendations, a decision which appellants appealed to the Board.

The Board addressed appellants' appeal regarding the revised red-lined development plan together with their appeal regarding the refined development plan. It dismissed the latter appeal, concluding that the appeal was moot. The circuit court reached the same conclusion, finding that, because "the case ha[d] gone forward on the [revised] 'red-lined' development plan," the "need for the exemption [was] no longer operative" and the petition on the refined plan was moot.

## STANDARD OF REVIEW

In reviewing the decision of an agency, our role "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Md. State Police v. Warwick Supply & Equip. Co., Inc.,* 330 Md. 474, 494, 624 A.2d 1238 (1993).

In making such a determination, we "may not substitute our judgment for that of the Board ... unless the

agency's conclusions were not supported by substantial evidence or were premised on an error of law." *Montgomery County v. Rotwein,* 169 Md.App. 716, 727, 906 A.2d 959 (2006). Moreover, in deciding "whether the agency's conclusions were premised on an error of law, we ordinarily give 'considerable weight' to 'an administrative agency's interpretation and application of the statute which the agency administers.'" *Id.* (citing *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 68–69, 729 A.2d 376 (1999)).

## DISCUSSION

### I

■ Appellants contend that the recommendations by the Directors of the Office of Planning and DEPRM that the revised red-lined development plan complied with the requirements of §§ 1A03.5(A) and (C) were "without legal effect" because they were "not supported by facts and reasons." Hence the Board erred, they claim, in "accept[ing]" and relying on these recommendations in affirming the hearing officer's approval of the development plan. We disagree.

The circuit court ordered two issues to be considered by the Board on remand: first, whether the Directors of the Office of Planning and DEPRM determined "that the proposed area complie[d] with the regulation and standards" under § 1A03.5(A) and second, "whether the proposed conservancy area [would] be under unified control," as required by § 1A03.5(C). On remand, the Directors determined that Elm Street's revised red-lined development plan complied with the regulations and standards of § 1A03.5(A) and that the entire conservancy area was now under the sole ownership of Glen Arms Homes, LLC, and thus under its unified control, as called for by § 1A03.5(C).

And that was all the agencies were required to do. Neither the BCZR nor the Code demand anything more. Nor can we read a requirement into the BCZR or the Code that the Directors of the Office of Planning and DEPRM must articulate the "facts and reasons" underlying their decisions. In

fact, it is clear that, when either the BCZR or the Code requires that the basis of an agency's opinion be set forth, it plainly imposes such a requirement.

For example, under BCZR § 1A07.4(A), before any development plan concerning property in an area zoned RC–6 can be approved, the Director of Planning "must certify in a *written finding* that the plan . . . is consistent with the spirit and intent of" the relevant regulations. (emphasis added). Similarly, under Code § 32–3–232, the Director of the Office of Planning is required "[u]pon notification by an owner of an error in the zoning map . . . [to] [i]nvestigate . . . and . . . [s]end the [D]irector's *findings* to the owner" (emphasis added). Moreover, under Code § 33–2–202, the Director of DEPRM "may grant . . . approval" of development in the Chesapeake Bay Critical Area "after making *written findings* that the [development] is consistent with the purposes stated under § 33–2–103 of this title and the Chesapeake Bay Critical Area criteria" (emphasis added). Furthermore, under Code § 32–4–254, DEPRM and the Office of Planning are required to "either approve the site analysis plan or *specify the revisions or additional information necessary for obtaining approval of the site analysis plan*" for property in an RC–6 zoned area (emphasis added). And, finally, under Code § 32–4–272, PDM and DEPRM must either approve a plat or *"notify the applicant in writing of the reasons for modification or disapproval* [of the plat]" (emphasis added).

But neither the BCZR nor the Code requires that "findings" be made or reasons be given by the Office of Planning or DEPRM in its review of Elm Street's development plan. All that is required, under the BCZR, is that the Office of Planning and DEPRM "determine" that the plan meets the requirements of § 1A03.5(A) and possibly § 1A03.5 (C) and, under the Code, that they submit any "comments," "responses" and "recommendations" from the agencies or the Community Input Meeting to the hearing officer at least five days before the hearing, Code § 32–4–226(d)(1). Hence, we conclude that, had the County wanted the Directors of the Office of Planning and DEPRM to state "facts and reasons" in their

recommendations regarding the development plan's compliance with §§ 1A03.5(A) and (C), the BCZR would have said so.

■ And, contrary to appellants' argument, once the Directors had made their recommendations, it was not necessary for Elm Street or the agencies to produce evidence supporting those decisions. *See* Code §§ 32–4–227(e) and 32–4–228(a)(1); *Gough v. Board of Zoning Appeals,* 21 Md.App. 697, 704, 321 A.2d 315 (1974). Instead, it was then up to appellants to produce evidence rebutting the Directors' recommendations. *See id.*

■ Under the County's lengthy development plan review process, Elm Street's duty to demonstrate its plan's compliance with §§ 1A03.5(A) and (C) ended when the Directors of the Office of Planning and DEPRM determined there was such compliance. Once that occurred, Elm Street could, according to Code § 32–4–227(e), simply accept those recommendations and choose not to submit any comments or conditions to the hearing officer. And this is what it did.

■ Moreover, the Code requires the hearing officer to consider the development plan "to be in compliance with county regulations" if "no comments or conditions are received" by him. Code § 32–4–227(e)(2). In other words, at this stage of the development plan review process, the development plan is deemed Code-compliant in the absence of evidence to the contrary.

■ Although appellants had the opportunity to question the agencies as to their recommendations and to point out any failings, omissions or errors, they declined to do so. Nor did appellants present any evidence regarding the plan's lack of compliance with §§ 1A03.5(A) or (C). Therefore, the hearing officer had to accept as established the revised red-lined plan's compliance with county regulations and approve the plan. *See also People's Counsel v. Mockard,* 73 Md.App. 340, 349, 533 A.2d 1344 (1987) (where the Board's decision is "uncontradicted from other sources and only one conclusion [can] be

reached" from the evidence presented, "a lack of findings will not warrant remand").

 While the circuit court did remand the case for lack of "substantial evidence" as to the property's compliance with the requirements of §§ 1A03.5(A) and (C), "substantial evidence" in this context does not necessarily require, as appellants claim, an articulation of the underlying "facts and reasons." Substantial evidence is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Warwick Supply & Equip. Co., Inc.*, 330 Md. at 494, 624 A.2d 1238. The revised red-lined development plan and the recommendations submitted by the Directors of the Office of Planning and DEPRM were such relevant evidence, and the hearing officer properly accepted that evidence as sufficient to meet the requirements of §§ 1A03.5(A) and (C).

 Nor did the Board err in upholding the hearing officer's decision. In reviewing the hearing officer's approval of a development plan, the Board is "not vested with broad visitorial power . . . but acts rather as a review board, to assure that lower agency decisions are in conformance with law and are supported by substantial evidence." *Monkton Preservation Ass'n v. Gaylord Brooks Realty Corp.*, 107 Md. App. 573, 580, 669 A.2d 195 (1996). And there is no indication that it did not properly carry out that function.

We dispose of appellants' argument that the Board erroneously deferred to the "expert opinions" of the Office of Planning and DEPRM, without scrutiny, by simply noting that the recommendations of the County agencies were rendered, without explanation, as the law permits.

We further note that appellants rely heavily on zoning cases—principally *Mockard* and *People's Counsel v. Beachwood I. Ltd. P'ship*, 107 Md.App. 627, 670 A.2d 484 (1995)—to support their claims that the Office of Planning and DEPRM should have articulated the "facts and reasons" for their recommendations and that the Board thereby erred in relying on those recommendations. But these cases are not applicable here. Even though, as appellants argue, Code § 32–4–114

requires compliance with "all other applicable laws and regulations of the county," Maryland courts treat the review of zoning matters and of development plans as separate matters which "may be subjected to a separate development and approval procedure" because they each have "an independent purpose." *Wesley Chapel Bluemount Ass'n v. Baltimore County*, 347 Md. 125, 129, 699 A.2d 434 (1997). This is why "[i]n most jurisdictions, including Baltimore County, subdivision regulations are enacted and codified separately." *Friends of the Ridge v. Baltimore Gas & Elec. Co.*, 352 Md. 645, 649 n. 4, 724 A.2d 34 (1999). In fact, the Court of Appeals has stressed that "[t]he approval or disapproval of a development plan is simply not a 'zoning matter.'" *Id.*

Finally, we observe that underlying all of appellants' arguments is the implication that Office of Planning and DEPRM failed to conduct a proper review of the property's compliance with § 1A03.5(A) and § 1A03.5(C). Appellants in effect claim that the County officials acted in an arbitrary and capricious manner in making their recommendations. But, "in the absence of evidence to the contrary, administrative officers ... [are] presumed to have properly performed their duties and to have acted regularly and in a lawful manner." *Md. Securities Com'r v. U.S. Securities Corp.*, 122 Md.App. 574, 588, 716 A.2d 290 (1998). And, since appellants chose not to produce any evidence or even question the County representatives as to the basis for their recommendations, we must conclude that the agencies carried out their duties properly.

## II

Appellants claim that the Board should have held as "invalid" PDM's approval of the refined plan because "it was procedurally irregular and not approved in a legal way." They argue that Elm Street took a "quasi-*ex parte* approach" at the DRC, which they describe as "a kind of star chamber which caters to developers." They also claim that the approval of the plan was in any event "null and void" because it involved "the amendment of a plan subsequently invalidated

by the circuit court." They further claim that the proposed change was "material" in nature. Finally, they maintain that, if this Court agrees that the approval of the revised red-lined plan must be reversed, then the refined plan is "likewise unsustainable for failure to prove satisfaction of conservancy area standards." We find no merit to appellants' arguments.

 Appellants fail to address the most important point here. The circuit court dismissed their case, not on the merits, but because it was moot.[4] Because "[t]he failure of an appellant to raise an issue in the appellate court is usually deemed a waiver as to the issue," *Moats v. City of Hagerstown*, 324 Md. 519, 525, 597 A.2d 972 (1991), appellants, we believe, have waived this issue. *See also Greenfield v. Heckenbach*, 144 Md.App. 108, 120–21, 797 A.2d 63 (2002). As it is the basis of the circuit court's ruling, we need not proceed any further, but we nonetheless feel impelled to point out that even if the appeal were not moot, appellants' arguments have no merit.

 There was nothing in the County Code which prevented Elm Street from requesting, DRC from recommending, or PDM from granting approval of changes, material or otherwise, to the plan while an appeal, based on the original plan, was pending. The only restriction imposed by the Code, while such an appeal is pending, is that "a permit may not be issued and a plat may not be recorded in connection with a Development Plan that is the subject of the appeal." Code § 32–4–281(f)(1).

Appellants' claim that the refined plan was "null and void" because "it involved the amendment of a plan subsequently invalidated" by the circuit court also fails, because the original plan was not "invalidated" by the circuit court. The circuit court actually affirmed the Board's approval of the rest of the

---

**4.** "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Baltimore Sun Co. v. State*, 340 Md. 437, 454, 667 A.2d 166 (1995).

original development plan, only remanding two specific issues for approval. And the Code specifically allows the County to exempt certain changes to a development plan, such as "lot line adjustments" and other amendments to an approved development plan which "do not materially alter the proposed development," from the requirement of a Community Input Meeting and hearing before the hearing officer. Code § 32–4–106(b)(1)–(2).

We will not consider appellants' bald claim that "[t]he proposed change here was material" and hence that the refined plan, pursuant to Code § 32–4–262, had to be reviewed "in the same way as the original plan" because appellants present no argument as to why the change is material. *See, e.g., Klauenberg v. State*, 355 Md. 528, 552, 735 A.2d 1061 (1999) ("arguments not presented in a brief or not presented with particularity will not be considered on appeal").

As for appellants' argument that—if we agree that the approval of the revised red-lined plan must be reversed, then the refined plan is "likewise unsustainable for failure to prove satisfaction of conservancy area standards"—we will not consider it as it was not argued below. Maryland Rule 8–131(a).

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**