993 A.2d 175

Maceo L. NEAL

v.

CRIMINAL INJURIES COMPENSATION BOARD.

No. 0109, Sept. Term, 2009.

Court of Special Appeals of Maryland.

March 31, 2010.

Reversed and remanded with instructions.

Russell P. Butler (Lauren B. Tabackman, MD Crime Victims' Resource Center, Inc., on the brief), Upper Marlboro, for appellant.

Steven G. Hildenbrand (Douglas F. Gansler, Attorney general, on the brief), Baltimore, for appellee.

Panel: MEREDITH, MATRICCIANI, JAMES P. SALMON (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

This case stems from an assault perpetrated while the appellant was an inmate at the Jessup Pre–Release Unit in

Anne Arundel County. Appellant Maceo Neal (Mr. Neal) appeals the decision of the Circuit Court for Prince George's County affirming the decision of the Criminal Injuries Compensation Board (the Board), appellee, to deny permanent partial disability benefits for Mr. Neal. Mr. Neal presents one issue for our consideration:

I. Whether a victim of crime who loses an eye is entitled to permanent partial disability benefits as a matter of law.

We conclude that Mr. Neal is entitled to permanent partial disability benefits and reverse the decision of the Board to deny Mr. Neal these benefits.

## FACTS

On July 12, 2002, Mr. Neal was assaulted while he slept in the Division of Corrections. As a result of the assault, his right eye was injured and subsequently had to be removed. The medical work to repair Mr. Neal's eye was performed by Johns Hopkins University Clinical Practice Association and the bills were sent to Prison Health Services (PHS). PHS paid only a portion of the amount billed to Mr. Neal by Johns Hopkins, leaving an unpaid balance of $1,858.48. In July 2005, Mr. Neal's counsel attempted to get information from Johns Hopkins' billing department to find out whether the hospital was pursuing a settlement agreement with PHS to cover the unpaid bills, but he could not reach anyone.[1]

At the time of his injury, Mr. Neal was scheduled for work release. This process was delayed by three weeks due to the injury sustained as a result of the assault.

On November 4, 2004, Mr. Neal filed a Crime Victims' Compensation Application with the Board and sought to recover for medical expenses and the disability he incurred as a result of the assault. On November 30, 2004, the Board denied his claim for compensation because, it concluded, he

---

1. The Board later found, however, that there were no unreimbursed medical expenses.

had no unreimbursed medical expenses nor had he lost two continuous weeks' earnings. On December 22, 2004, Mr. Neal filed a petition for judicial review of the Board's decision. The Board consented to a reconsideration of his case and held a hearing on September 27, 2006. After the hearing, Mr. Neal was awarded $213.87 [2] in temporary total disability, but he was denied permanent partial disability for the same reason as the original decision, namely, that he had returned to work with no diminution in earnings.

On January 25, 2007, Mr. Neal sent a letter to the Board requesting that it reconsider its decision. On February 28, 2007, the Board issued its final decision, again denying Mr. Neal permanent disability but granting $213.87 in temporary total disability because the injury had delayed his assignment to work-release employment for three weeks. The Board stated in its final decision that the remainder of the medical bills were being reviewed for payment by other sources. Mr. Neal filed a second petition for judicial review in the Prince George's County Circuit Court on May 7, 2008.

On February 27, 2009, a hearing was held in the circuit court and Mr. Neal requested that the court reverse the Board's denial of his claim for permanent disability benefits. Mr. Neal asked that the Board be directed to pay his permanent partial disability benefits plus his outstanding medical bills. The court affirmed the Board's denial in an oral decision, and Mr. Neal timely appealed.

## DISCUSSION

### I.

Mr. Neal contends that the full panoply of disability benefits under Md.Code (1991, 2008 Repl. Vol.), Title Nine, Subtitle Six

---

**2.** The Board's final decision does not clarify how it calculated the amount of this award, but the workers' compensation statute specifies that a claimant who is permanently partially disabled is entitled to compensation equaling two-thirds of the claimant's average weekly wage for the period that the claimant is temporarily totally disabled. Md.Code (1991, 2008 Repl. Vol.), § 9–621 of the Labor and Employment Article (LE).

of the Labor and Employment Article are available to crime victims under Md.Code (2001, 2008 Repl. Vol.), Title Eleven, Subtitle Eight of the Criminal Procedure (CP) Article (criminal injuries compensation statute). He argues that the Board ignored the plain meaning of the criminal injuries compensation statute and the intent of the General Assembly to assist victims in obtaining disability benefits when the legislature removed the "serious financial hardship" requirement from the statute in 2001. Thus, he argues that a claimant no longer needs to show loss of earnings as a prerequisite to an award of permanent partial disability benefits.

The Board, on the other hand, contends that its decision to deny the permanent partial disability award was based on a correct conclusion of law. The Board argues that it was correct not to apply the workers' compensation statutory standards to Mr. Neal's claim for permanent partial disability because he failed to present any evidence of a loss in earnings or earnings capacity.

 Because this is an appeal from a circuit court's review of an agency's final decision, our role in this appeal is precisely the same as that of the circuit court. *Maryland Secs. Comm'r v. U.S. Secs. Corp.,* 122 Md.App. 574, 585, 716 A.2d 290 (1998). Appellate review of an administrative agency's decision is ordinarily narrow. *Finucan v. Md. State Bd. of Physician Quality Assur.,* 151 Md.App. 399, 411, 827 A.2d 176 (2003). We are limited to determining whether there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determining if the administrative decision is premised upon an erroneous conclusion of law. *Id.*

 We are also constrained by the Administrative Procedure Act, set forth in Md.Code Ann., State Government § 10–222 and § 10–223, from reversing or modifying the administrative decision unless it is: (1) unconstitutional; (2) exceeds the statutory authority or jurisdiction of the final decision maker; (3) results from an unlawful procedure; (4) is affected by any other error of law; (5) is unsupported by competent, material,

and substantial evidence in light of the entire record submitted; or (6) is arbitrary or capricious. We may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency. *Johnson v. Crim. Injuries Comp. Bd.*, 145 Md.App. 96, 106, 801 A.2d 1092 (2002).

■ Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. *Finucan*, 151 Md.App. at 411, 827 A.2d 176. Therefore, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Id.*; *People's Counsel for Balt. County v. Elm St. Dev., Inc.*, 172 Md.App. 690, 701, 917 A.2d 166 (2007).

When the words of a statute are clear and unambiguous, according to their commonly understood meaning, our inquiry ordinarily ends. *Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 212, 783 A.2d 194 (2001). Canons of construction are "no more than rules of thumb that help courts determine the meaning of legislation" and we must "presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Therefore, only when a term is reasonably susceptible to more than one meaning do we consider extrinsic evidence in order to ascertain its meaning. *Fister*, 366 Md. at 216, 783 A.2d 194.

However, the plain-meaning rule is not absolute. *Johnson v. Crim. Injuries Comp. Bd.*, 145 Md.App. 96, 111, 801 A.2d 1092 (2002). Rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. *Id.* A Maryland court looks at the larger context, including the legislative purpose, within which statutory language appears. *Id.* Construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided. *Id.*

■ The Criminal Injuries Compensation Act (the Act) is the statute through which the General Assembly undertook to

provide a measure of financial assistance in specified circumstances to innocent victims of crime and their dependents. *Gossard v. Criminal Injuries Compensation Board,* 279 Md. 309, 310, 368 A.2d 443 (1977). The specific provisions at issue in this case are codified in the Md.Code (2001, 2008 Repl. Vol.), § 11–810 of the CP Article, and read, in pertinent part:

**§§ 11–810. Conditions for awards on claims**

(a) In general.—

(1) The Board may make an award only if the Board finds that:

(i) a crime or delinquent act was committed;

(ii) the crime or delinquent act directly resulted in:

1. physical injury to or death of the victim; or

2. psychological injury to the victim that necessitated mental health counseling;

(iii) police, other law enforcement, or judicial records show that the crime or delinquent act or the discovery of child abuse was reported to the proper authorities within 48 hours after the occurrence of the crime or delinquent act or the discovery of the child abuse; and

(iv) the victim has cooperated fully with all law enforcement units.

\* \* \*

(c) Minimum allowable claim.—The Board may make an award only if the claimant, as a result of the injury on which the claim is based, has:

(1) incurred at least $100 in unreimbursed and unreimbursable expenses or indebtedness reasonably incurred or claimed for:

(i) medical care;

(ii) expenses for eyeglasses and other corrective lenses;

(iii) mental health counseling;

(iv) funeral expenses;

(v) repairing, replacing, or cleaning property;

(vi) disability or dependent claim; or

(vii) other necessary services; or

(2) lost at least 2 continuous weeks' earnings or support.[..]

Once an applicant for benefits has fulfilled the requirements outlined in § 11–810, the applicant will be awarded benefits pursuant to CP § 11–811, which reads, in pertinent part:

### §§ 11–811. Amount of award

(a) In general.—

(1) (i) Except as otherwise provided in this subsection, an award under this subtitle shall be made in accordance with the schedule of benefits, as it existed on January 1, 2001, and degree of disability as specified in Title 9, Subtitle 6 of the Labor and Employment Article and any other applicable provisions of the Labor and Employment Article, except for Title 9, Subtitle 8 of the Labor and Employment Article.

(ii) For determining the amount of an award under this subtitle, the term "average weekly wages" does not include tips, gratuities, and wages that are undeclared on the claimant's State or federal income tax returns for the applicable years.

(iii) If a claimant does not have "average weekly wages" to qualify under the formula in Title 9, Subtitle 6 of the Labor and Employment Article, the award shall be in an amount equal to the average of the maximum and minimum awards listed in the applicable portion of that subtitle.

(2) An award for loss of earnings or support made under this subtitle may be up to two-thirds of the victim's gross average wage, but may not be less than the amount provided in paragraph (1) of this subsection.

\* \* \*

(b) Limits.—Compensation awarded under this subtitle may not exceed:

(1) for a disability-related or dependency-related claim:

(i) except as provided in item (ii) of this paragraph, $25,000; or

(ii) if the injury to the victim results in permanent total disability, up to an additional $25,000 after a disability-related claim has been awarded to the victim[ . . . ]

In its findings of fact, the Board stated that "[t]he claimant suffered temporary total disability for three weeks, after which he was able to begin work-release employment." The Board's conclusions of law were the following:

(1) the claimant is the innocent victim of crime;

(2) the claimant satisfied the statutory criteria to qualify for an award for temporary total disability;

(3) The claimant, who returned to work with no evidence of diminution in earnings, does not qualify for permanent partial disability.

The Board awarded $213.87 for the three-week temporary total disability.

Mr. Neal argues that once he satisfied the statutory criteria outlined in CP § 11–810 [3] and showed that the loss of his eye was irreversible, the Board had no discretion to deny him benefits pursuant to the schedule outlined in CP § 11–811. [4]

---

**3.** The parties agree that Mr. Neal proved that he had lost three weeks' earnings as a result of the injury and thus he satisfied the predicate requirement of CP § 11–810(c)(2).

**4.** We need not address Mr. Neal's argument that, as a result of the statutory changes in 2001, simply making a disability claim is sufficient to obtain benefits, because the parties agree that he satisfied the threshold requirement in CP § 11–810(c)(2). However, the plain language of the statute does not support Mr. Neal's argument. The relevant statutory provision that is cited by Mr. Neal is CP § 11–810(c)(1)(vi), which states:

c. The Board may make an award only if the claimant, as a result of the injury on which the claim is based, has:
(1) incurred at least $100 in unreimbursed and unreimbursable expenses or indebtedness reasonably incurred or claimed for:
* * *
(vi) disability or dependent claim[.]
The appellant's reading of this statutory excerpt as requiring only the filing of a disability or dependent claim does not hold up under close scrutiny. According to the plain language of the excerpt, the claimant must have incurred at least $100 in either (1) unreimbursed or unreimbursable expenses, or (2) indebtedness. This requirement still acts as a

CP § 11–811 explicitly incorporates benefits under Maryland's workers' compensation statute, which is codified at Title Nine, Subtitle Six of the Labor and Employment Article. Thus, he argues that the loss of his right eye constitutes a permanent partial disability under the statute, and that he is entitled to the schedule of benefits outlined in the workers' compensation law for the loss of an eye.

LE § 9–627(d)(1)(vi) mandates that compensation shall be paid for 250 weeks for the loss of an eye.[5] Mr. Neal argues that his award should be based on "the average of the maximum and minimum awards" listed in Title Nine, Subtitle Six of the Labor and Employment Article. Mr. Neal argues that this amount is $359.00.[6] Although compensation for a period of 250 weeks at an average weekly wage of $359.00 would result in an award of $89,750.00, CP § 11–811(b)(1) limits compensation to a maximum of $25,000[7] for most disability-related claims.

The Board contends that Mr. Neal is not entitled to further financial assistance solely because he sustained a permanent injury. The Board argues that he was compensated pursuant to CP § 11–810(c)(2) for his lost earnings by the award of $218.37, and that because he failed to make the threshold showing of a diminution in earning capacity due to his disability, his award should not be calculated in accordance with the workers' compensation schedule for permanent partial disabili-

---

predicate to the phrase "claimed for ... disability or dependent claim." If the General Assembly had intended to remove the $100 requirement entirely in the case of disability claims, it could have done so.

**5.** Mr. Neal's injury was permanent in the sense that there is no possibility that he will regain vision in his injured eye. The permanent loss of use of an eye is equivalent to the anatomical loss of such member. LE § 9–627(e).

**6.** Mr. Neal calculated this amount by averaging the state average weekly wage for 2001, which was $668.00, with the minimum award listed in LE § 9–626, which is $50.00.

**7.** The claimant is entitled to $50,000 if the injury results in permanent total disability. CP § 11–811(b)(1)(ii).

ty benefits for the loss of an eye. In effect, the Board argues that it has the discretion to deny permanent disability benefits to a claimant if the claimant is unable to show a diminution in actual-earning capacity or a diminution in future-earning capacity.

The Board argues that the substantive standards that govern whether a workers' compensation claimant qualifies for a disability award from the workers' compensation commission are not incorporated by CP § 11–811. Thus, the Board contends, it is irrelevant that a workers' compensation claimant is not required to show evidence of an actual earnings loss to qualify for an award for permanent partial disability. *Miller v. Western Electric Co.*, 310 Md. 173, 187–8, 528 A.2d 486 (1987). To support this interpretation of the statute, the Board argues that the criminal injuries compensation program for crime victims was never intended to provide compensation for a victim's injury, but instead to provide compensation for an injured victim to the extent of the loss of earnings or earning capacity.

Mr. Neal urges us to look beyond *Williams v. Criminal Injuries Compensation Board,* 307 Md. 606, 516 A.2d 573 (1986). The Court of Appeals held in *Williams* that an employee who was shot and blinded did not show that his injuries would cause him additional expenditures and loss of income in the future and thus had failed to show the requisite serious financial hardship required for an award of permanent partial disability benefits. *Id.* at 616, 516 A.2d 573. The Board did, however, award Williams money for his medical expenses and lost earnings. *Id.* at 609, 516 A.2d 573. The Court of Appeals held:

> The Act makes no provision for a compensatory award for a permanent partial disability independent of the type of pecuniary losses expressly enumerated in §§ 12(f)(1). Nor is there anything in §§ 12(b) of the Act, implicating the payment schedules of the Workmen's Compensation Act, which authorizes the Board to make any additional award to a claimant for permanent partial disability; indeed, that subsection merely establishes a framework within which the

Board is to measure the maximum amount of benefits to be paid to an eligible claimant where a §§ 12(f)(1) award has been made. To adopt Williams' construction of the statute would be to sanction an award for a purpose and in an amount greater than that authorized by §§ 12(f)(1) without regard to serious financial hardship.

*Id.* at 614–15, 516 A.2d 573.

In 2001, the General Assembly deleted language requiring a showing of "serious financial hardship" before an award could be made under the Criminal Injuries Compensation Act. The specific language which was deleted stated:

The Board may make an award under this subtitle only if the Board determines that, without the award, the claimant will suffer serious financial hardship from the loss of earnings or support and medical and other expenses incurred as a result of the injury or death.

The Court of Appeals relied on the lack of a showing of serious financial hardship in order to deny permanent partial disability benefits to Williams. The Court held in *Williams:*

Therefore, a crime victim who demonstrates serious financial hardship by showing the requisite level of out-of-pocket expenses, and/or lost earnings, and/or loss of support, and who is compensated for those losses, is not entitled to further pecuniary recompense solely because he sustained a permanent injury, such as the loss of an eye. On the record in this case, there is no showing that Williams' permanent disability will in the future cause him additional expenditures or loss of income for which he will have the requisite degree of financial need under §§ 12(f)(1).

*Id.* at 615–16, 516 A.2d 573.

The Board's interpretation of the statute, which was affirmed by the Court of Appeals in *Williams,* was that expenses/lost earnings/loss of support were separate from the determination of permanent partial disability, and that the statutory predicates had to be satisfied in **both** instances in order for the claimant to recover for the permanent disability. In essence, the Board argues the same thing today: a crime

victim who can show lost wages or unreimbursed expenses pursuant to CP § 11–810 and who is then compensated for those losses, as Mr. Neal undeniably was, is not entitled to an additional award based solely on the basis of a permanent injury. The Court's logic in *Williams,* however, did not survive the 2001 statutory changes. The Board presented little in the way of evidence or reasoning to support its argument, beyond its reminder that the statute was adopted with statutory prerequisites for monetary awards because the funds to be distributed under the statute are public funds.[8]

Although we owe deference to the agency's interpretation of the Act, we are not persuaded by the Board's argument. The Board conceded that Mr. Neal met the requirements of CP § 11–810(c)(2) and is entitled to benefits. What the Board failed to explain adequately, however, is why those benefits would be limited to temporary disability benefits for the loss of an eye when the workers' compensation statutory schedule requires the $25,000.00 payment.

For us to accept the Board's argument that it has wide discretion to categorize the claimant's injuries, even after the claimant has satisfied one of the predicate requirements listed in CP § 11–810(c), we would have to grant more power to the Board than the General Assembly has expressly allocated per the statute. Furthermore, this allocation of further discretion to the Board would occur even though the General Assembly recently removed the requirement of serious financial hardship in order to make it easier for a claimant to recover under the statute.

In *Opert v. Crim. Inj. Comp. Bd.,* 403 Md. 587, 602, 943 A.2d 1229 (2008), the Court of Appeals held:

[I]t is clear from the statement of legislative policy in CP § 11–802 that the law is remedial in nature, and remedial statutes are to be liberally construed. The Legislature has

---

**8.** What the Board did not address is why the existing statutory prerequisites, such as CP § 11–810(c), as well as other limits on recovery such as the $25,000.00 threshold, are not sufficient to ensure the functionality of the statutory scheme.

recognized and articulated that "there is a need for government financial assistance for these victims" and that "[t]he policy of the State is that help, care, and support be provided by the State, as a matter of moral responsibility, for these victims." CP § 11–802. That objective, that policy, is advanced by construing ambiguous language in favor of eligibility.

Therefore, the plain language of the statute, as well as the important public policy that animates the original passage of the statute and the statutory revisions of 2001, all mitigate in favor of an award of permanent partial disability benefits for Mr. Neal. We hold that the Board erred in denying those benefits for Mr. Neal and remand the case to the circuit court with instructions that the court order the Board to award $25,000.00 in permanent partial disability benefits to Mr. Neal.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS THAT THE COURT ENTER AN ORDER REQUIRING THE BOARD TO AWARD $25,000.00 IN PERMANENT PARTIAL DISABILITY BENEFITS TO THE APPELLANT.**

**COSTS TO BE PAID BY APPELLEE.**